IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REDBOX AUTOMATED RETAIL LLC, | : | |
| Plaintiff, | : | Civil No. 08-766 (RBK) |
| v. | : | **OPINION** |
| UNIVERSAL CITY STUDIOS LLLP, et al, | : | |
| Defendants. | : | |

**KUGLER, United States District Judge**:

This matter comes before the Court on a motion by Defendants Universal Studios Home Entertainment LLC, Universal City Studios LLLP, and Universal City Studios Production LLLP (collectively, "Universal") to dismiss the Complaint filed by Redbox Automated Retail LLC ("Plaintiff" or "Redbox") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons expressed below, the Court will grant in part and deny in part Universal's motion to dismiss.

**I.     BACKGROUND**

Redbox is a company that rents and sells digital video disks ("DVDs") to consumers through self-service kiosk machines located in retail outlets. Redbox has more than 12,000 kiosks in chain restaurants, grocery stores, and drug stores in "The 'Burbs" and in cities nationwide. Redbox kiosks each contain up to 700 DVDs (70-200 individual titles), including multiple copies of new release DVDs. Redbox makes new release DVDs available in every

"Hamlet" in America with a Redbox on the same day that the DVDs are released by the studio to the general public. "The Fast and the Furious" expansion of the Redbox network of kiosks has resulted in more than 300 million DVD rentals from Redbox kiosks since the company's founding in 2002. Redbox provides a consumer-friendly rental system, with automated payment via credit card, flexibility as to the return kiosk for any particular DVD, and a low-cost alternative to other DVD rental and purchase options. New release DVDs are available for rent from Redbox kiosks for $1 per night, as opposed to an average cost of $3.25 from alternative sources. Consumers also are able to get more than "Two for the Money" when purchasing DVDs from Redbox kiosks, where previously-viewed new release DVDs sell for as little as $7, typically available 12 days after release, as opposed to the average cost of $18.50 from alternative sources.

Consumers, apparently, have "Great Expectations" about the availability of new release films. Redbox represents that a new release DVD generates 30% of the total revenue for that particular film on DVD during the first two weeks after release, peaking during the weekend immediately after the DVD is released to the public. Also, Redbox claims that more than 60% of the rental demand for a particular movie on DVD comes in the first 45 days after the DVD is released to the public. Redbox maintains that those market demands combined with kiosk ubiquity and the ability to stock as many as 45 copies of a new release per kiosk on the same day a DVD is released to the public makes Redbox a valuable option for consumers.

Redbox represents that when consumers approach a Redbox kiosk looking for a particular newly released film, they are looking for "The Real McCoy" and typically are unwilling to accept a substitute. The crux of Redbox's extensive description of the market for new release DVDs and the impact of Universal's conduct is that a consumer approaching a Redbox kiosk on the

weekend after the release of "Brüno" will not be tempted to rent "To Kill A Mockingbird." If Redbox does not stock the new release, Redbox argues that it loses the consumer's business on that date, assuming an acceptable substitute for "Brüno" is not available.

Redbox does significant business with two film distributors, VPD and Ingram. Redbox and Ingram have a supply contract that gives Redbox the right to purchase DVDs from Ingram, and obligates Ingram to order DVDs from movie studios at Plaintiff's request. Redbox represents that it has a similar relationship with VPD, although the agreement is not reduced to a single writing. In its relationships with both VPD and Ingram, Redbox also may sell back previously-viewed DVDs. Both distributors provide additional services to Redbox including packaging, sorting, shipping, and storage of DVDs. Redbox's distribution system allocates much less revenue to a movie studio when a consumer rents or buys a DVD from a kiosk than when a consumer rents or buys the same DVD from an alternative source.

Universal is a movie studio and "The Producers" of films Redbox provides to consumers. Universal also does business with VPD and Ingram, and contracts with both to distribute Universal's films in accordance with Universal's wishes. Approximately 15% of the DVDs Redbox purchases from VPD and Ingram are marketed and sold by Universal.

Plaintiff's claims arose when Universal allegedly pressured VPD and Ingram to cease filling Redbox's orders for Universal DVDs. On August 26, 2008, Universal representatives met with Redbox personnel to propose a Revenue Sharing Agreement between Universal and Redbox. The agreement would involve Universal licensing its DVDs directly to Redbox, taking a greater share in the revenue generated from Redbox's rental scheme, and removing the distributors from the transaction. Redbox contends, however, that the agreement amounts to

Universal's professional "Duplicity," as it also would prohibit Redbox from renting or selling Universal DVDs until 45 days after the DVD would otherwise become available to the public. Universal told Redbox that were it not to agree to the agreement, Universal would compel VPD and Ingram to stop selling Universal DVDs to Redbox. As was forewarned, Redbox claims that it can no longer obtain new release Universal DVDs through its normal distribution channels, VPD and Ingram.

Redbox maintains that Universal has otherwise failed to "Do the Right Thing" in seeking to prevent Redbox from buying new release Universal DVDs from other wholesalers and retailers, and in some cases succeeding in those attempts. With the "Mercury Rising" in the relationship between Redbox and Universal, Redbox employees turned to a "Cloak and Dagger" exercise, visiting Wal-Mart and Best Buy stores in an attempt to purchase multiple copies of Universal DVDs. Their attempts proved unsuccessful when retailers either limited the copies available for one individual to purchase or refused to sell the DVDs to Redbox personnel entirely. Redbox's "Counsellor at Law" argues that this treatment evinces more than an illegal agreement between Universal and Redbox's primary distributors, but also a concerted boycott of Redbox among wholesalers and retailers.

Redbox began "Raising Cain" in October 2008, alleging four claims against Universal in a Complaint filed in this Court. It alleged Universal's acts amounted to: (1) copyright misuse; (2) antitrust violations under the Quick Look Doctrine; (3) antitrust violations under the Rule of Reason; and (4) tortious interference with contract. Universal filed a motion to dismiss the Complaint for failure to state a claim, the motion considered by the Court in this Opinion. Rather than oppose the motion, Plaintiff filed an Amended Complaint, adding and omitting facts

and adding claims against Universal. Universal filed a supplemental memorandum in support of its earlier motion. Thereafter, upon consultation with the parties, this Court ordered the case referred for mediation. Counsel for Redbox filed its opposition to the instant motion, to which Universal replied. Upon receipt of notice that the parties, with the assistance of their respective "Legal Eagles," failed to resolve this matter in mediation, the Court turned its attention to the instant motion, now considered in light of Plaintiff's Amended Complaint. The Amended Complaint adds two antitrust counts, bringing the total number of counts filed pursuant to the Sherman Antitrust Act ("the Sherman Act"), 15 U.S.C. § 1, et seq., to four. In substance, the other claims generally remain the same as originally filed. Thus, the Amended Complaint sounds in six counts: (1) copyright misuse; (2) antitrust violations under the Quick Look Doctrine; (3) antitrust violations under the Rule of Reason doctrine; (4) antitrust violations amounting to restraint of trade; (5) antitrust violations under Section 1 of the Sherman Act; and (6) tortious interference with contract.

## II.     LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations, along with all reasonable inferences that may be drawn from them, as true. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)). The Court may dismiss the Complaint only if Plaintiff can prove no set of facts that would entitle him to relief. Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted). Nevertheless, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp.

5

v. Twombly, 550 U.S. 544, 545 (2007).

## III. ANALYSIS

### A. Copyright Misuse

Plaintiff claims that Universal is engaged in copyright misuse, a claim unavailable to Plaintiff in this action as well as impertinent to the current dispute. Plaintiff asserts that Universal's proposed Revenue Sharing Agreement with Redbox, which remains unsigned, would have restricted the distribution of Universal's copyrighted DVDs contrary to the public policy aims of copyright law. Further, Plaintiff claims that Universal has staged a boycott of sales of Universal DVDs to Redbox, violating the first sale doctrine of Section 109(a) of the Copyright Act. Plaintiff seeks declaratory relief from the Court, a judgment that Universal's actions constitute copyright misuse and that Universal is precluded from enforcing copyrights for its new release DVDs. Further, Plaintiff asks that the Court declare Redbox free to lawfully reproduce and sell copies of Universal's copyrighted material for as long as Universal restricts distribution of its DVDs to Redbox.

Copyright misuse is not a claim but a defense, and Redbox may not create a justiciable claim for copyright misuse in this jurisdiction by labeling Count I as one seeking declaratory relief. See Arista Records, Inc. v. Flea World, Inc., 356 F. Supp. 2d 411, 428 (D.N.J. 2005) (citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 269 F. Supp. 2d 1213, 1226 (C.D. Cal. 2003)). Regardless of Plaintiff's citation to other courts in other jurisdictions, the Court of Appeals in this Circuit has not addressed the issue of whether plaintiffs may raise copyright misuse as an affirmative cause of action, as opposed to a defense. In keeping with other courts in this Circuit, this Court will not permit Redbox to bring such a claim in this case. Furthermore,

the Court is not convinced that Plaintiff's case raises questions of copyright law. Accordingly, the Court will grant Universal's motion to dismiss Count I.

B. Antitrust

Universal moves to dismiss Plaintiff's Counts II - V in the Amended Complaint, which all allege violations of Section 1 of the Sherman Act. In Counts II and III, Plaintiff raises Sherman Act claims pursuant to the "quick look doctrine" and the "rule of reason," respectively. Those two concepts, however, are modes of analysis used by courts in considering allegations of antitrust violation. Modes of analysis do not amount to separate grounds for antitrust claims. Further, Plaintiff raises Sherman Act claims separately as "restraint of trade" in Count IV and a "violation of section 1" of the Sherman Act in Count V. Again, Plaintiff's distinction is inappropriate. In Counts II - V, Plaintiff asserts a single claim alleging Universal's violation of Section 1 of the Sherman Act, so the Court will not distinguish among the four separately alleged Counts.

Although Plaintiff deems its antitrust claim against Universal a "group boycott" or an otherwise artificial restraint on trade (in the form of the proposed Revenue Sharing Agreement), its description of its claims in those terms is inconsistent with the fundamental claims alleged in the Amended Complaint and Plaintiff's arguments in opposition to the instant motion. Plaintiff claims Universal demanded that Redbox sign the Revenue Sharing Agreement, an alleged restraint on the supply and price of Universal DVDs.[1] Further, Plaintiff contends that when it refused to sign, Universal orchestrated a boycott of Redbox by Ingram, VPD, and other

---

[1] Plaintiff claims that Universal violated the Sherman Act when it proposed a contract that Plaintiff did not sign. As the parties did not agree to the contract, the terms of the contract are not binding, and cannot form the basis of Plaintiff's claim.

7

distributors and retailers, including Best Buy and Wal-Mart. Redbox contends that Universal induced those entities not to sell Universal DVDs to Redbox, or risk themselves losing the opportunity to distribute or sell Universal DVDs.

Although Redbox's first approach, in Count II, is to have the Court assess its antitrust claim under the quick look doctrine, it also makes representations in Count III in an attempt to make a claim to satisfy a rule of reason analysis. Plaintiff did not only claim that Universal's conduct amounted to a group boycott, which is per se a violation of the Sherman Act, <u>U.S. v. General Motors Corp.</u>, 304 U.S. 127, 145-46 (1966), but also raised its claim in the context of the rule of reason. The Court needs not consider whether Plaintiffs allegations amount to a per se violation or would only be deemed illegal after a rule of reason analysis. <u>Cal. Dental Ass'n v. FTC</u>, 526 U.S. 756, 779 (1999) ("The truth is that our categories of analysis of anticompetitive effect are less fixed than terms like "per se," "quick look," and "rule of reason" tend to make them appear. We have recognized, for example. that "there is often no bright line separating per se from rule of reason analysts," since "considerable inquiry into market conditions" may be required before the application of any so-called "per se" condemnation is justified.") (quoting <u>Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.</u>, 468 U.S. 85, 99 (1984)). "'[W]hether the ultimate finding is the product of a presumption or actual market analysis, the essential inquiry remains the same whether or not the challenged restraint enhances competition.'" <u>Id.</u> at 779-80 (quoting <u>NCAA</u>, 468 U.S. at 104). Plaintiff's form of pleading and its defense of the rule of reason approach in its opposition to the instant motion does suggest to the Court that Plaintiff's "group boycott" label does not reflect the whole of Plaintiff's claim. Group boycotts are defined by the Supreme Court as "concerted refusals by traders to deal with

other traders." Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 212 (1959). Plaintiff's Sherman Act claim, practically speaking, alleges a vertical nonprice restraint or vertical boycott, Universal's limitation on the distribution of its DVDs. See, e.g., Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36 (1977).

The review at this stage is limited to this Court's consideration of the allegations in Plaintiff's Complaint, whether Plaintiff sufficiently has stated a claim of an unreasonable restraint on trade under the Sherman Act. Twombly, 550 U.S. at 545. Section 1 of the Sherman Act declares that, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. At this stage, to state a claim that Universal violated Section 1 of the Sherman Act, Plaintiff sufficiently must allege, "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that the plaintiff was injured as a proximate result of the concerted action." Queen City Pizza, Inc. V. Domino's Pizza, Inc., 124 F.3d 430, 442 (3d Cir. 1997).

The Court is convinced that Plaintiff sufficiently pleaded that Universal has induced or otherwise convinced others to boycott Redbox in distribution of Universal DVDs, producing anti-competitive effects, specifically Redbox's inability to compete in the DVD rental and sales markets of Universal DVDs. Further, the Court finds that Plaintiff has sufficiently pleaded the illegality of Universal's actions, and that those acts are the proximate cause of economic and other injuries to Redbox. Plaintiff has properly pleaded a claim for a violation of Section 1 of the Sherman Act, and its antitrust claim will not be dismissed. The rule of reason analysis that

eventually guides the Court's consideration of the merits of Plaintiff's claim requires a broad examination of the multitude of factors bearing on whether Universal's alleged acts are uncompetitive in nature. Accepting Plaintiff's allegations, along with all reasonable inferences that may be drawn from them, as true, the Court is satisfied with the sufficiency of Plaintiff's pleading and leaves a more searching inquiry and balancing of competitive factors to the analysis of Plaintiff's claim on the merits. Accordingly, the motion to dismiss Plaintiff's antitrust claim will be denied.

### C. Tortious Interference With Contract

Redbox alleges that Universal tortiously interfered with Redbox's contracts with Ingram and VPD. The elements of tortious interference with contract are (1) the existence of a valid business relationship, (2) the interferer's knowledge of the relationship, (3) intentional interference that (4) induces or causes a breach of the relationship which in turn (5) causes damages. See Corning Inc. v. SRU Biosystems, LLC, 292 F. Supp. 2d 583, 585-86 (D. Del. 2003).

Redbox alleges in Count VI of its Amended Complaint that it has valid business relationships with Ingram and VPD and that Universal knows of those relationships. Redbox claims that Universal threatened Ingram and VPD to no longer supply Universal DVDs to Redbox, or risk losing their distribution relationship with Universal altogether. Redbox contends that Universal's threat constitutes an intentional inducement for Ingram and VPD to breach their agreements with Redbox. Further, Redbox alleges that Ingram and VPD no longer sell Universal DVDs to Redbox, which Redbox contends constitutes a breach of its agreements with the distributors. Redbox represents that its resulting damages include a loss of customers, decreased

demand for Redbox rentals and purchases and a diminution of goodwill.

As a general matter, a District Court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). However, there are exceptions to this rule. Mele v. Federal Reserve Bank of N.Y., 359 F.3d 251, 255 n. 5 (3d Cir. 2004). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. See Mele, 359 F.3d at 255 n. 5.

Redbox attached to its Amended Complaint its contract with Ingram, which Redbox represents is substantially similar to the agreement it has with VPD, though the latter is not reduced to a single writing. The Court will, pursuant to the Third Circuit direction on the question of consideration of documents outside the pleadings when considering a motion to dismiss, assess Plaintiff's claim in light of the Ingram contract. The Court finds that, although the parties do not reference the issue at all in their memoranda on the instant motion, Ingram's contractual obligations to Redbox do not include the guaranteed provision of Universal DVDs upon Redbox's demand. In other words, although Redbox claims that Universal interfered with Ingram and VPD's contractual obligation to sell Universal DVDs to Redbox, the contract which Redbox presented the Court to evince such an obligation belies the claim as asserted. The Redbox-Ingram contract obligates Ingram to "order DVD software from the studios at the pricing negotiated by Redbox" and cautions that Ingram's timely delivery to Redbox is conditioned on "Ingram Entertainment's suppliers mak[ing] timely delivery to Ingram." Because the contract

does not obligate Ingram unconditionally to deliver Universal, or any, DVDs to Redbox, Ingram's decision not to supply Redbox with Universal DVDs technically is not a breach of the agreement between Redbox and Ingram.[2] The claim thus fails on the fourth element, breach.

Furthermore, a party is "privilege[d] to compete or protect his business affairs in a fair and lawful manner." DeBonaventura v. Nationwide Mut. Ins. Co., 428 A.2d 1151, 1153 (Del. 1981). Delaware courts rely upon Section 773 of the Second Restatement of Torts, which provides a defense to a party who, in good faith, "assert[s] a legally protected interest of [its] own," when considering a claim of tortious interference. To qualify for the defense available under § 773, the defending party must "(1) [have] a legally protected interest, and (2) in good faith assert [ ] or threaten[ ] to protect it, and (3) the threat is to protect it by appropriate means." Restatement (Second) of Torts § 773 (1979).

The Court finds, upon review of Universal's contracts with Ingram and VPD, that it had a legally protected interest in the specific distribution of its DVDs. The contracts between Universal and both distributors read, "Distributor shall not sell to any account other than a retail account as verified by Universal." Plaintiff expressly acknowledged these of Universal's contractual rights in Plaintiff's original Complaint in this case, noting that, "VPD and Ingram have contracts with [Universal]. In these contracts, [Universal] has demanded and obtained the right to terminate those contracts at will if VPD and Ingram do not distribute Universal's DVDs

---

[2] On a motion to dismiss, the Court considers Plaintiff's allegations in the Complaint as true, so the Court will accept Redbox's representation that its relationship with VPD was substantially the same as that with Ingram.

in accordance with Universal's wishes." (Complaint at ¶ 36.)[3] The Court has already concluded that Plaintiff has failed to state a claim for tortious interference, by failing to claim breach of contract by Ingram and VPD. Universal's motion rests squarely on its assertion of the legal question of its right to enforce its own contracts with the distributors without being liable for tortious interference, and the Court has found that its contracts with the distributors do represent legally protected interests. However, the Court will not root its dismissal of Count VI on Universal's defense, as the § 773 defense also relies on questions of fact, whether Universal acted in good faith and by appropriate means.

Accordingly, the Court will grant Universal's motion and dismiss Count VI of Plaintiff's Amended Complaint.

## IV. CONCLUSION

Based upon the foregoing, the Court will GRANT Universal's motion to dismiss Counts I and VI of Plaintiff's Amended Complaint and DENY Universal's motion to dismiss Plaintiff's antitrust claim. An accompanying Order shall issue today.

Dated:    8-17-09                                                                  /s/ Robert B. Kugler
                                                                                    ROBERT B. KUGLER
                                                                                    United States District Judge

---

[3] That Plaintiff omits this statement from its Amended Complaint is of no consequence to the Court's analysis. Upon its introduction of the contractual term, Redbox opened the door for Universal to introduce the contracts themselves upon its motion to dismiss, which it did.