**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC,<br><br>        Plaintiff<br><br>v.<br><br>UNIVERSAL STUDIOS HOME<br>ENTERTAINMENT, LLC, UNIVERSAL<br>CITY STUDIOS, LLLP, UNIVERSAL CITY<br>STUDIOS PRODUCTIONS, LLLP, and<br>FOCUS FEATURES, LLC,<br><br>        Defendants. | Civil Action No. 08-766 (RBK) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO CERTIFY AUGUST 17, 2009 ORDER
FOR § 1292(b) INTERLOCUTORY APPEAL**

OF COUNSEL:

Glenn D. Pomerantz (CA Bar No. 112503)
David C. Dinielli (CA Bar No. 177904)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560

Paul H. Zoubek (PA Bar No. 36716)
R. Monica Hennessy (PA Bar No. 77928)
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, NJ  08002


Dated:  September 30, 2009

R. Montgomery Donaldson (DE Bar 4367)
*rdonaldson@mmwr.com*
Lisa Zwally Brown (DE Bar 4328)
*lzbrown@mmwr.com*
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
1105 N. Market St., Suite 1500
Wilmington, DE  19801
(302) 504-7800
*Counsel for Defendants*
*Universal Studios Home Entertainment, LLC,*
*Universal City Studios, LLLP, Universal City*
*Studios Productions, LLLP, and Focus*
*Features LLC*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

    A.      Redbox Alleged Harm Only To Its Business, as Opposed to Harm to
                Competition in the Marketplace .................................................................. 2

    B.      The Court's August 17 Ruling on Redbox's Antitrust Claim ...................... 6

III.    ARGUMENT ....................................................................................................... 7

    A.      The Requirements Of 28 U.S.C. § 1292(b) ................................................. 7

    B.      The Question Presented Is A Controlling Question Of Law, In That A
                Negative Answer Would Result In Dismissal Of Redbox's Antitrust
                Claims ........................................................................................................ 7

    C.      Substantial Grounds For Difference Of Opinion Exist As To The Court's
                Ruling on the Sufficiency of Redbox's Allegations .................................. 8

        1.      The "Rental and Sales Market of Universal DVDs" Does Not
                    Constitute a Relevant Product Market for Antitrust Purposes ................. 9

        2.      Harm to One Competitor Alone Does Not Constitute An
                    "Anticompetitive Effect" ...................................................................... 10

        3.      Harm to Intrabrand Competition Alone Does Not Constitute An
                    "Anticompetitive Effect" ...................................................................... 10

        4.      This Court Cited No Contrary Authority in Support of its Holding ........ 11

    D.      Immediate Interlocutory Review Would Materially Advance The Ultimate
                Termination Of This Litigation .................................................................. 13

IV.     CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ............................................................................................ 8

*Bansavich v. McLane Company, Inc.,*
2008 WL 4821320 (D. Conn. Oct. 31, 2008) ....................................................... 10

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................ 8, 14

*Bradburn Parent Teacher Store, Inc. v. 3M,*
2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) .......................................................... 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) ........................................................................................ 3, 10

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.,*
996 F.2d 537 (2d Cir. 1993) ............................................................................ 10, 14

*Carell v. Shubert Org., Inc.,*
104 F. Supp. 2d 236 (S.D.N.Y. 2000) ................................................................... 9

*City of Pittsburgh v. West Penn Power Co.,*
147 F.3d 256 (3d Cir. 1998) .................................................................................. 14

*Commonwealth of Pennsylvania v. Pepsico, Inc.,*
836 F.2d 173 (3d Cir. 1988) .................................................................................. 14

*Continental T.V., Inc. v. GTE Sylvania Inc.,*
433 U.S. 36 (1977) .................................................................................... 4, 11, 12

*E&L Consulting Ltd. v. Doman Indus. Ltd.,*
472 F.3d 23 (2d Cir. 2006) .................................................................................... 11

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.,*
129 F.3d 240 (2d Cir. 1997) .................................................................................. 11

*Geneva Pharm. Tech. v. Barr Labs. Inc.,*
386 F.3d 485 (2d Cir. 2004) ................................................................................... 5

*Habitat Ltd. v. Art of the Muse, Inc.,*
2009 WL 803380 (E.D.N.Y. Mar. 25, 2009) ............................................. 10, 11, 13

*Harter v. GAF Corp.,*
150 F.R.D. 502 (D.N.J. 1993) ........................................................................... 8, 13

*Katz v. Carte Blanche Corp.,*
496 F.2d 747 (3d Cir. 1974) .................................................................................... 7

*Klinghoffer v. S.N.C. Achille Lauro,*
921 F.2d 21 (2d Cir. 1990) ..................................................................................... 8

*Larsen v. Senate of the Commonwealth of Pennsylvania,*
965 F. Supp. 607 (M.D. Pa. 1997) .................................................................... 8, 13

*Longo v. Carlisle DeCoppett & Co.,*
537 F.2d 685 (2d Cir. 1976) ................................................................................... 6

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................................... 14

*Mogul v. General Motors Corp.*,
391 F. Supp. 1305 (E.D. Pa. 1975) ......................................................................... 9

*NicSand, Inc. v. 3M Co.*,
507 F.3d 442 (6th Cir. 2007) ................................................................................. 14

*O.S.C. Corporation v. Apple Computer, Inc.*,
792 F.2d 1469-70 (9th Cir. 1986) ...................................................................... 6, 12

*Orson, Inc. v. Miramax Film Corp.*,
79 F.3d 1358 (3d Cir. 1996) ................................................................................ 4, 5

*Orson, Inc. v. Miramax Film Corp.*,
867 F. Supp. 319 (E.D. Pa. 1994) .......................................................................... 10

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .................................................................................... 7

*Pitts v. Chester County Hospital*,
2000 WL 218125 (E.D. Pa. Feb. 24, 2000) ............................................................ 13

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997) .............................................................................. 11, 12

*Sitkin Smelting & Refining Co. v. FMC Corp.*,
575 F.2d 440 (3d Cir.), cert. denied, 439 U.S. 866, (1978) .................................... 15

*Spahr v. Leegin Creative Leather Prods., Inc.*,
2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) .................................................. 9, 12

*Stanley v. St. Croix Basic Services, Inc.*,
2008 WL 4861448 (D.V.I. Nov. 3, 2008) ............................................................... 13

*Stark v. Ear Nose & Throat Specialists of Northwestern Pennsylvania*,
P.C, 185 Fed. App'x. 120 (3d Cir. 2006) ............................................................... 14

*Swietlowich v. Bucks County*,
610 F.2d 1157 (3d Cir. 1979) ................................................................................. 16

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001) .................................................................................... 9

*TV Communications Network, Inc. v. Turner Network Television, Inc.*,
964 F.2d 1022 (10th Cir. 1992) .............................................................................. 12

*United States v. Jerry*,
487 F.2d 600 (3d Cir. 1973) ................................................................................... 16

## FEDERAL STATUTES

28 U.S.C. § 1292(b) .......................................................................................... *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

## FEDERAL RULES

Fed. Rule Civ. Proc. 12(b)(6) .................................................................................................. 14

Fed. Rule Civ. Proc. 8(a)(2) ..................................................................................................... 8

Universal Studios Home Entertainment LLC, Universal City Studio LLLP, Universal City Studios Productions LLLP, and Focus Features LLC (collectively "Universal") respectfully request that the Court certify for interlocutory appellate review under 28 U.S.C. § 1292(b) the Court's August 17, 2009 Order (the "August 17 Order") granting in part and denying in part Universal's Motion to Dismiss Plaintiff Redbox Automated Retail, LLC's ("Redbox") First Amended Complaint ("FAC").

## I.    __INTRODUCTION__

Redbox attempts through its FAC to jettison long-standing, fundamental antitrust principles that have governed relationships between suppliers and their distributors for years. Although this Court rejected Redbox's non-antitrust claims in its August 17 Order, the Court declined to dismiss the antitrust claims on grounds that are contrary to many court decisions. Universal submits this motion to seek immediate appellate review by the Third Circuit pursuant to 28 U.S.C. § 1292(b).  Section 1292(b) permits certification of questions for immediate appellate review where the district court's ruling involves a controlling question of law as to which there are substantial grounds for difference of opinion and resolution of which would materially advance termination of the litigation if resolved by immediate appeal.  This Court's ruling on the antitrust claim presents two such questions:

> *(1)    Whether, as a matter of law, allegations of harm to a single downstream retailer resulting from a non-price vertical restraint are sufficient to satisfy the "anticompetitive effects" element of a Section 1 rule-of-reason claim under the Sherman Act?*
>
> *(2)    Whether, as a matter of law, allegations of harm to intrabrand competition resulting from a non-price vertical restraint and*

*unaccompanied by any allegations of harm to* interbrand *competition, are*
*sufficient to satisfy the "anticompetitive effects" element of a Section 1*
*rule-of-reason claim under the Sherman Act?*

This Court answered these questions in the affirmative in its August 17 Order.  In
particular, this Court concluded that Redbox had sufficiently pleaded "anti-competitive effects,"
as is required to state a claim under Section 1 of the Sherman Act, by alleging "Redbox's
inability to compete in the DVD rental and sales markets of Universal DVDs."  August 17 Order,
at 9.  The Court did so despite the fact that "the DVD rental and sales markets of Universal
DVDs" is not a plausible relevant product market for antitrust purposes, and notwithstanding the
fact that Redbox failed to allege harm to other competitors, harm to competition in the
marketplace, or harm to competition among the various motion picture studios that supply digital
versatile discs ("DVDs").  Universal asks this Court to certify the questions above for immediate
interlocutory review under 28 U.S.C. § 1292(b).  Interlocutory review is necessary in this case to
avoid inconsistent judicial decisions and to preserve competition in the marketplace.

## II.    **BACKGROUND**

### A.    **Redbox Alleged Harm Only To Its Business, as Opposed to Harm to Competition in the Marketplace**

Redbox is a company that rents and sells DVDs to consumers through self-service kiosk
machines located in retail outlets.  August 17 Order, at 1.  Universal is a motion picture studio
that produces motion pictures for distribution to consumers through a variety of distribution
channels.  For example, Universal contracts with both VPD and Ingram to distribute Universal's
DVDs in accordance with Universal's wishes.  *Id.* at 3.  After Universal and Redbox failed to
reach agreement on the terms and conditions of a Revenue Sharing Agreement through which
Redbox would purchase Universal DVDs directly, Redbox alleges that Universal directed VPD

and Ingram as well as certain retailers not to resell Universal DVDs to Redbox.  FAC ¶¶ 47, 49-

50.  Redbox further alleges that Universal's agreements with VPD and Ingram, which permit

Universal to direct these distributors no longer to sell Universal DVDs to Redbox, constitute

illegal vertical agreements in violation of Section 1 of the Sherman Act.  FAC ¶ 82.  Universal's

actions, Redbox alleges, have stifled competition in the market for single titles of DVDs, or, in

the alternative, the market for "new release titles belonging to different categories or genres."

FAC ¶¶ 41, 70, 77.  In particular, Redbox alleges that some consumers will have to pay more for

Universal's DVDs because they cannot rent or purchase them through Redbox's low-cost

alternative, and that output of Universal's DVDs is reduced because Redbox cannot distribute

them.[1]  FAC ¶¶ 51, 56, 78.

Thus, Redbox's primary complaint is that it has been harmed by Universal's decision not

to supply it with Universal DVDs.  This allegation raises two fundamental and closely-related

problems under the antitrust laws:  (1) the antitrust laws are intended to protect competition, not

individual competitors, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977),

so harm to one individual competitor is generally insufficient to state a claim for relief under the

Sherman Act; and (2) the primary focus of the antitrust laws is *interbrand* competition --

competition between competing manufacturers of the same product -- not *intrabrand*

competition, which refers to competition between distributors of a particular manufacturer's

---

[1] Redbox's allegations about lack of access to Universal product are contradicted by its own statements to the media.  *See, e.g.,* "Whither Redbox?  Hollywood Studios Are Conflicted," *Yahoo! Finance* (August 7, 2009), *available at* http://finance.yahoo.com/news/Whither-Redbox-Hollywood-apf-3727024446.html?x=0&.v=1 ("'Redbox will employ alternative, proven acquisition channels to provide our customers with the same level of service, convenience and value they've come to expect,' said [Redbox] in a statement.  When Universal turned its distributors' tap off last year, Redbox just bought the discs at retail outlets and rented them out anyway … With Fox now imposing a delay on wholesale copies, Redbox plans to simply buy discs at regular retailers."), attached hereto as Exhibit 1.

product.  *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 52 n.19 (1977) (explaining the distinction and noting that "interbrand competition is … the primary concern of antitrust law"); *see also Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1368 (3d Cir. 1996) ("The Supreme Court has … repeatedly confirmed in vertical restraint cases that interbrand competition, as opposed to intrabrand competition, is the primary goal of the antitrust laws.").

In this case, for example, Universal competes with other major motion picture studios in producing and releasing DVDs for sale and rental to consumers.  Each week, Universal is competing with Disney, Paramount, and other studios in movie theatres, retail outlets, and elsewhere to get consumers to watch and buy its movies rather than one of its competitor's movies.  Indeed, in its original Complaint, Redbox alleged that Universal's movies comprised only 15% of the movies that Redbox rents to consumers, with the other 85% being comprised of competing studios' movies.  *See* Redbox Complaint, at ¶ 34.  Such "interbrand" competition inures to consumers' benefit by ensuring vigorous competition among the studios on price, quality, availability, and other attributes.  Intrabrand competition, on the other hand, is that which exists between competing distributors or sellers of the same manufacturer's product -- in this case, Universal DVDs.  Redbox is one such competing seller, but there are many, many others, including traditional retailers, brick-and-mortar rental outlets such as Blockbuster, and mail-order or online retailers like Netflix.

Redbox does not allege that Universal's vertical agreements with its distributors harm these other competitors or that they harm competition in the marketplace as a whole.  For example, it *does not* allege that Universal has conspired with Disney, Paramount, or any other studio to reduce interbrand competition among the studios.  Nor does it allege that Blockbuster, Netflix, or any other retailer, much less competition among them, has been hurt by Universal's

decision not to supply its movies to Redbox.  Redbox does not make these allegations because they are not true.  In fact, absolutely nothing in Universal's decision about Redbox prevents Disney, Paramount, or any other studio from continuing to sell or not to sell its DVDs to Blockbuster, Netflix, or any other retailer competitor of Redbox, or to Redbox itself, on whatever terms they see fit.[2]

Courts should, and do, interpret the antitrust laws to encourage innovation and flexibility through vertical arrangements, notwithstanding the fact that a single competitor may be harmed, *see Geneva Pharm. Tech. v. Barr Labs. Inc.*, 386 F.3d 485, 507 (2d Cir. 2004) ("Because the antitrust laws protect competition as a whole, evidence that plaintiffs have been harmed as individual competitors will not suffice."), or that intrabrand competition may be affected.  *See Orson*, 79 F.3d at 1372 (dismissing movie theater's complaint for failure to allege anticompetitive effects and noting that, "[a]lthough the Miramax-Ritz clearances most certainly reduced intrabrand competition to some degree by disallowing the Roxy from showing on a first-run basis any Miramax film that the Ritz had selected, they undeniably promoted interbrand

---

[2] In fact, each of the major motion picture studios is currently making its own decision about how to distribute its own DVDs to consumers in competition with the other studios, and deciding whether and how Redbox fits into its unique distribution plan.  Some studios, including Universal, Fox, and Warner Bros., have decided that they want their DVDs available through Redbox only after those DVDs are available at other sorts of retail outlets.  On the other hand, certain of Universal's principal competitors, including Sony Pictures Home Entertainment, Lionsgate, and Paramount Home Entertainment, have made different decisions and have entered into direct distribution agreements with Redbox.  *See* "Sony Pictures Home Entertainment and *Redbox* Announce Distribution Agreement" (July 21, 2009), *available at* http://www.redboxpressroom.com/releases/PressRelease_SonyPictures_072109.html, "*Redbox* and Lionsgate Sign Multi-Year Distribution Agreement" (Aug. 12, 2009), *available at* http://www.redboxpressroom.com/releases/PressRelease_Lionsgate_081109.html, and "Paramount Home Entertainment and *Redbox* Announce Trial License Program" (Aug. 5, 2009), *available at* http://www.redboxpressroom.com/releases/PressRelease_Paramount_082509.html, attached hereto as Exhibits 2, 3 and 4 respectively.  And of course the various studios continue to make their own decisions about whether and how they deal with the many other retailers that distribute DVDs.  Thus, the competing studios' varying approaches are indications of vigorous *interbrand* competition, playing itself out in a dynamic marketplace.

competition by requiring the Roxy to seek out and exhibit the films of other distributors, which it consistently accomplished"); *O.S.C. Corporation v. Apple Computer, Inc.*, 792 F.2d 1469-70 (9th Cir. 1986) (approving supplier's no-mail-order policy, which was instituted to ensure Apple products were sold only by face-to-face transactions, and noting that "a manufacturer such as Apple is free to impose a non-price restraint on a dealer so long as there is no pernicious economic effect on *interbrand* competition") (emphasis added).

It is against this backdrop that the Court issued its ruling on Universal's motion to dismiss Redbox's First Amended Complaint.[3]

### B. The Court's August 17 Ruling on Redbox's Antitrust Claim

In its August 17 Order, the Court held that Redbox sufficiently pleaded "that Universal has induced or otherwise convinced others to boycott Redbox in distribution of Universal DVDs, producing anti-competitive effects, specifically Redbox's inability to compete in the DVD rental and sales markets of Universal DVDs." August 17 Order, at 9 (emphasis added). The Court thereby allowed Redbox's claim to go forward despite the fact that it alleged harm only to one retail competitor and alleged harm only to intrabrand competition.

As described more fully below, courts facing similar allegations have expressed opinions substantially different than the opinion of this Court. This is precisely the type of case in which the remedy of immediate interlocutory review is justified. *See, e.g., Longo v. Carlisle DeCoppet & Co.*, 537 F.2d 685 (2d Cir. 1976) (reversing order on interlocutory appeal where lower court's decision was in conflict with the decision of all courts of appeals that had ruled on the issue).

---

[3] The FAC also alleged claims for copyright misuse and tortious interference, which the Court dismissed in its August 17 Order. Redbox's antitrust claim is thus the only remaining claim in this lawsuit and the only claim addressed in this Motion.

III.    **ARGUMENT**

    A.    **The Requirements Of 28 U.S.C. § 1292(b)**

A district court may certify a non-final order for interlocutory appeal if the order "involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).  As explained below, the August 17 Order meets all three of these criteria.

    B.    **The Question Presented Is A Controlling Question Of Law, In That A Negative Answer Would Result In Dismissal Of Redbox's Antitrust Claims**

An order involves a controlling question of law if either (1) an incorrect disposition would constitute reversible error if presented on final appeal or (2) the question is serious to the conduct of the litigation either practically or legally.  *Katz,* 496 F.2d at 755.

As the Third Circuit has noted, "[f]ew issues in civil procedure jurisprudence are more significant than pleading standards, which are the key that opens access to courts."  *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).  Application of the inappropriate pleading standard in a particular case would thus not only constitute reversible error, but would also have a serious impact on the pending litigation -- both practically and legally.  *See Katz*, 496 F.2d at 755.  Here, and as explained more fully below, a negative answer to either of the questions posed above -- that is, a finding that, as a matter of law, a plaintiff <u>cannot</u> state a cognizable claim for relief under Section 1 of the Sherman Act in a non-price vertical restraint case where it alleges only harm to its own business or where it fails to allege harm to interbrand competition -- would result in dismissal of Redbox's antitrust claims, and end this lawsuit.  Thus, this question presents a controlling issue of law appropriate for appellate certification.  *See*

*Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question

of law is 'controlling' if reversal of the district court's order would terminate the action.").

### C.     Substantial Grounds For Difference Of Opinion Exist As To The Court's Ruling on the Sufficiency of Redbox's Allegations

A question involves substantial grounds for difference of opinion "where there is genuine

doubt or conflicting precedent as to the correct legal standard." *Bradburn Parent Teacher Store,*

*Inc. v. 3M*, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005). Such a question is presented here.

In *Twombly*, the Supreme Court held that a plaintiff must allege sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court expounded upon the *Twombly*

standard in *Ashcroft v. Iqbal*, explaining that, "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." 129 S.Ct. 1937, 1949 (2009). Thus, "where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id*. at 1950

(quoting Fed. Rule Civ. Proc. 8(a)(2)).

The great weight of judicial authority indicates that Redbox cannot plausibly state a claim

for relief in this case based on the allegations of anticompetitive effects that this Court found

sufficient in its August 17 Order. This Court's ruling to the contrary thus gives rise to substantial

grounds for difference of opinion. *See, e.g., Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J.

1993) (noting that question of certification depends in part on "the legal standard applied in the

decision for which certification is sought and whether other courts have substantially differed in

applying that standard"); *Larsen v. Senate of the Commonwealth of Pennsylvania*, 965 F. Supp.

607, 609 (M.D. Pa. 1997) (finding substantial grounds for difference of opinion where at least

one other district court had reached a different conclusion regarding the question before it).

### 1.    The "Rental and Sales Market of Universal DVDs" Does Not Constitute a Relevant Product Market for Antitrust Purposes

Courts have routinely dismissed complaints for failure to allege a relevant product market in cases that have involved "(1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way." *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001).  The simple fact that a particular product -- for example, a particular Universal DVD title -- is characterized as "unique" does not mean that it constitutes an appropriate product market for antitrust purposes.  *See Mogul v. General Motors Corp.*, 391 F. Supp. 1305, 1313 (E.D. Pa. 1975), *aff'd without opinion*, 527 F.2d 645 (3d Cir. 1976) (concluding that a Cadillac automobile was not "so unique" as alone to constitute a relevant product market, noting that a Cadillac is "interchangeable with other luxury automobiles ... [and] competes with even the less expensive models of automobiles in serving the consuming public's transportation needs and desires.").

Even extending the product market definition beyond a particular title to all Universal DVDs is insufficient to withstand dismissal, since "the law is clear that the distribution of a single brand like the manufacture of a single brand, does not constitute a legally cognizable market."  *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 265 (S.D.N.Y. 2000); *see also Spahr v. Leegin Creative Leather Prods., Inc.*, 2008 WL 3914461, at *10 (E.D. Tenn. Aug. 20, 2008) ("Courts have consistently refused to consider one brand to be a relevant market of its own when the brand competes with other potential substitutes.") (collecting cases).

As demonstrated below, the failure to allege a plausible relevant market definition infects the entirety of Redbox's FAC and presents questions of law that must be addressed through

immediate interlocutory appeal.

### 2.    Harm to One Competitor Alone Does Not Constitute An "Anticompetitive Effect"

Proper product market definition is absolutely critical in antitrust cases to ensure that the antitrust laws are being employed "for the protection of *competition* not *competitors*." *Brunswick*, 429 U.S. at 488 (internal quotations omitted); *see also Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) ("Insisting on proof of harm to the whole market fulfills the broad purpose of the antitrust law that was enacted to ensure competition in general, not narrowly focused to protect individual competitors.") (emphasis added).  Where, as here, the plaintiff alleges injury only to its own business, as opposed to alleging an adverse effect on competition as a whole, the law mandates dismissal of those claims at the outset.  *See, e.g.*, *Bansavich v. McLane Company, Inc.*, 2008 WL 4821320, *4 (D. Conn. Oct. 31, 2008) (dismissing plaintiff's complaint where, "[t]he complaint sets forth allegations supportive of an injury to plaintiff's business, but antitrust injury must represent an adverse effect on competition as a whole in the relevant market rather than to plaintiff").

### 3.    Harm to Intrabrand Competition Alone Does Not Constitute An "Anticompetitive Effect"

Not only are the antitrust laws intended to protect competition rather than individual competitors, but the primary focus of the antitrust laws is one particular type of competition -- interbrand competition.  Thus, Redbox's allegations of harm to intrabrand competition alone, without any alleged anticompetitive effect on interbrand competition, cannot suffice as a matter of law.  *See, e.g., Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 321 (E.D. Pa. 1994) (finding "no support" for plaintiff's emphasis on intrabrand competition or its assertion that "antitrust laws were enacted to enhance competition among exhibitors of individual films").

*Habitat Ltd. v. Art of the Muse, Inc.*, 2009 WL 803380 (E.D.N.Y. Mar. 25, 2009), is a

good example of this legal mandate.  In *Habitat*, a post-*Twombly* vertical restraint case decided on the pleadings, the court dismissed the plaintiff's complaint for failure to allege anticompetitive effect where the only harm alleged was harm to the plaintiff's business and not to interbrand competition in the relevant market.  As is Redbox, the plaintiff in *Habitat* was a jilted retailer that brought a lawsuit alleging that its inability to sell the defendant's products had anticompetitive effects because "consumers have less market options for the purchase of [defendant's] products."  *Id.* at *2.  The court held that the plaintiff had failed adequately to allege anticompetitive effects, noting that, "[s]imply put, the fact that consumers can no longer purchase Oly furniture from Plaintiff or other hypothetical small retailers does not amount to an injury to competition as a whole."  *Id.* at *8; *see also E&L Consulting Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006) (granting defendants' motion to dismiss where alleged restraint impacted only intrabrand competition); *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 244-45 (2d Cir. 1997) (dismissing case involving "a dispute about the way one product is distributed, a question of intrabrand competition" and noting that, "to sustain a section 1 claim, a plaintiff must … show more than just an adverse effect on competition among different sellers of the same product") (internal quotations and citation omitted).

### 4.    This Court Cited No Contrary Authority in Support of its Holding

In its August 17 Order, the Court noted that Redbox's allegations were governed by the Supreme Court's decision in *Sylvania* and the Third Circuit's relevant product market decision in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 442 (3d Cir. 1997).  August 17 Order, at 9.  By invoking the Supreme Court's decision in *Sylvania*, the Court made clear that this case must be analyzed under well-settled precedent governing non-price vertical restraints.  Neither *Sylvania* nor *Queen City*, however, supports the Court's conclusion that Redbox has sufficiently alleged anticompetitive effects.  In fact, *Sylvania* is perhaps one of the Supreme

Court's strongest statements that, in cases alleging non-price vertical restraints, the primary concern is interband, not intrabrand, competition. *See Sylvania*, 433 U.S. at 54-55 ("Vertical restrictions promote interband competition by allowing the manufacturer to achieve certain efficiencies in the distribution of his products. These 'redeeming virtues' are implicit in every decision sustaining vertical restrictions under the rule of reason. Economists have identified a number of ways in which manufacturers can use such restrictions to compete more effectively against other manufacturers."); *Apple Computer*, 792 F.2d at 1469-70 (rejecting plaintiff's claim that a vertical restriction was unlawful because it "eliminate[d] a form of intrabrand competition" and noting that *Sylvania* foreclosed any such argument). Absent any contrary binding authority, and because this case involves a garden-variety, non-price vertical restraint, the Supreme Court's guidance in *Sylvania* must govern.

And, *Queen City*, especially when read in light of the Supreme Court's new pleading standards of *Twombly* and *Iqbal*, makes clear that the relevant product market definition adopted by this Court is facially implausible and contrary to the great weight of controlling authority. *See Queen City*, 124 F.3d at 436 ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted."); *see also Spahr*, 2008 WL 3914461, at *9 (finding that plaintiffs' single brand product market definition failed to meet the "threshold of plausibility"); *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992) (affirming district court's dismissal of claim for failure to plead a relevant market; proposed relevant market consisting of only one specific

television channel was defined too narrowly).

In light of the fundamental antitrust principles discussed above, and given the lack of any contrary authority in support of the Court's decision, substantial grounds for difference of opinion exist with respect to the standard this Court applied. Immediate interlocutory review is therefore justified. *See Pitts v. Chester County Hospital*, 2000 WL 218125, at *2 (E.D. Pa. Feb. 24, 2000) (finding substantial grounds for difference of opinion where court's decision came in direct conflict with recent decisions made by other courts in the Circuit). *Cf. Stanley v. St. Croix Basic Services, Inc.*, 2008 WL 4861448 (D.V.I. Nov. 3, 2008) (finding no substantial grounds for difference of opinion where no authority contradicting the legal standards applied by the Court existed and where plaintiffs were not challenging that the Court misapplied well-settled law).

### D. Immediate Interlocutory Review Would Materially Advance The Ultimate Termination Of This Litigation

Appellate review of this Court's August 17 Order would not only "materially advance" this litigation, but would dispose of it altogether. *See, e.g., Habitat*, 2009 WL 803380 (dismissing complaint for failure to allege anticompetitive effect where restraint impacted intrabrand competition alone). Additionally, Redbox has filed almost identical lawsuits against two other studios (Fox and Warner Bros.), and appellate review could substantially impact the course of those cases as well. Interlocutory review is especially important in situations such as this, where an appeal could avoid expense and protracted discovery and ultimately eliminate the need for a trial. *Larsen*, 965 F. Supp. at 610; *see also Harter*, 150 F.R.D. at 518 ("Typically, section 1292(b) is applied in situations where, if the trial court decision were reversed on appeal, the litigation would then end."). Here, the cost, time, and expense associated with this case as well as Redbox's other two pending cases, could be substantially reduced, if not entirely avoided, through the interlocutory review process.

The likelihood that the continued pendency of Redbox's action will have a chilling effect on the competitive functioning of the marketplace further justifies the need for appellate review. As described above, the business dispute between studios and Redbox is playing itself out in the marketplace according to competitive forces and in furtherance of interbrand competition, precisely as Congress intended when enacting the antitrust laws.  The mere pendency of litigation of this type raises the serious risk of interfering with competitive market forces and therefore courts are encouraged not to let antitrust cases proceed past the pleading stage without a sufficient pleading.  *See, e.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) (noting that mistaken inferences in certain antitrust cases "are especially costly, because they chill the very conduct the antitrust laws are designed to protect");[4] *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998) ("[T]he constitutional and prudential requirements of standing take on particular significance in the context of the antitrust laws, where a balance must be struck between encouraging private actions and deterring legitimate competitive activity through overly vigorous enforcement."); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (noting that, "when a complaint by its terms fails to establish [the antitrust standing] requirement we must dismiss it as a matter of law -- lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant them to be"); *Capital Imaging*, 996 F.2d at 539 (cautioning that were the

---

[4] Although *Matsushita* is a summary judgment case, courts have frequently applied lessons from *Matsushita* in the context of Rule 12(b)(6) motions.  *See, e.g.*, *Twombly*, 550 U.S. at 554; *Stark v. Ear Nose & Throat Specialists of Northwestern Pennsylvania, P.C,* 185 Fed. App'x. 120, 124 (3d Cir. 2006) (noting *Matsushita*'s limits on the range of permissible inferences from ambiguous evidence in reviewing Rule 12(b)(6) dismissal of plaintiff's antitrust claims, and remarking that "there is often a fine line separat[ing] unlawful concerted action from legitimate business practice") (citation omitted); *Commonwealth of Pennsylvania v. Pepsico, Inc.*, 836 F.2d 173, 181-82 (3d Cir. 1988) (stating that certain language from the Court's decision in *Matsushita*, although arising in the summary judgment context, was "not irrelevant" to the inquiry at the motion to dismiss stage).

"heavy power [of antitrust law] brought into play too readily it would not safeguard competition, but destroy it").

Immediate interlocutory review would thus materially advance the termination of the litigation and the third prong of 28 U.S.C. § 1292(b) has been met.

## IV.    **CONCLUSION**

Rather than recognize Universal's undisputed right to determine the terms on which it wants to do business (indeed, if it wants to do business at all), Redbox would prefer to have this Court, under the guise of an antitrust claim, force Universal to reach commercial deals on terms dictated by Redbox.  *Cf. Sitkin Smelting & Refining Co. v. FMC Corp.*, 575 F.2d 440, 448 (3d Cir.), *cert. denied*, 439 U.S. 866 (1978) (noting that the Sherman Act is not "a panacea for all business affronts which seem to fit nowhere else").  It is an abuse for private plaintiffs to use the threat of treble damages and expensive litigation to seek a result in connection with a business dispute that they were unable to achieve in the marketplace.  And, as demonstrated by the cases cited above, courts wary of such potential for abuse have repeatedly warned against allowing misguided antitrust actions to proceed past the pleading stage.  Because the Court's August 17 Order presents controlling questions of law, about which there exist substantial grounds for difference of opinion and the resolution of which is material to termination of this litigation and to the proper functioning of the marketplace as a whole, Universal respectfully requests that this Court certify the following questions for immediate interlocutory review pursuant to 28 U.S.C. § 1292(b):

> *(1)    Whether, as a matter of law, allegations of harm to a single downstream retailer resulting from a non-price vertical restraint are sufficient to satisfy the "anticompetitive effects" element of a Section 1*

> *rule-of-reason claim under the Sherman Act?*
>
> *(2)    Whether, as a matter of law, allegations of harm to* intrabrand *competition resulting from a non-price vertical restraint and unaccompanied by any allegations of harm to* interbrand *competition, are sufficient to satisfy the "anticompetitive effects" element of a Section 1 rule-of-reason claim under the Sherman Act?*

In addition, this Court has inherent authority to reconsider its order denying Universal's motion to dismiss Redbox's antitrust claim.  *See, e.g., United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) (noting that the court possesses inherent power to reconsider its interlocutory orders "when it is consonant with justice to do so"); *Swietlowich v. Bucks County*, 610 F.2d 1157, 1164 (3d Cir. 1979) ("[A] trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result.").  If the Court now concluded that dismissal of the antitrust claim is mandated by the law, then it could enter an amended order.  If the Court does so, then Universal withdraws its request for certification under 28 U.S.C. § 1292(b).

Respectfully submitted,

OF COUNSEL:

Glenn D. Pomerantz, Bar No. 112503
David C. Dinielli, Bar No. 177904
Munger, Tolles & Olson LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560

Paul H. Zoubek
(PA Bar I.D. No. 36716)
R. Monica Hennessy
(PA Bar I.D. No. 77928)
**Montgomery McCracken, Walker &
Rhoads, LLP**
Liberty View
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
(856) 488-7700

Dated:  September 30, 2009

_/s/ R. Montgomery Donaldson_
R. Montgomery Donaldson (DE Bar ID 4367)
_rdonaldson@mmwr.com_
Lisa Zwally Brown (DE Bar ID 4328)
_lzbrown@mmwr.com_
**Montgomery, McCracken, Walker &
Rhoads, LLP**
1105 N. Market St., Suite 1500
Wilmington, DE  19801
(302) 504-7800
_Counsel for Defendants Universal Studios
Home Entertainment, LLC, Universal City
Studios, LLLP, Universal City Studios
Productions, LLLP, and Focus Features, LLC_