## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

REDBOX AUTOMATED RETAIL, LLC, )
)
       Plaintiff, )
)
       v. )
)
UNIVERSAL STUDIOS HOME )
ENTERTAINMENT, LLC; UNIVERSAL )
CITY STUDIOS, LLP; UNIVERSAL CITY )
STUDIOS PRODUCTIONS, LLP; and )
FOCUS FEATURES, LLC, )
)
       Defendants. )

C.A. No. 08-766-RBK

**JURY TRIAL DEMANDED**

## REDBOX AUTOMATED RETAIL, LLC'S ANSWERING BRIEF IN OPPOSITION TO UNIVERSAL'S REQUEST FOR A SECTION 1292(b) FINDING

Henry E. Gallagher, Jr. (No. 495)
Chad S.C. Stover (No. 4919)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
Wilmington, DE  19801
(302) 658-9141
hgallagher@cblh.com
cstover@cblh.com

Charles S. Bergen
George R. Dougherty
Michael S. Gulland
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
(312) 704-7700

Frederick W. Stein
REDBOX AUTOMATED RETAIL, LLC
One Tower Lane, Suite 1200
Oakbrook Terrace, Illinois 60181
(630) 756-8255

*Attorneys for Plaintiff*
*Redbox Automated Retail, LLC*

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

I.      Nature And Stage Of Proceedings. ......................................................... 1

II.     Summary Of Opposition Argument. ....................................................... 1

III.    Relevant Factual Background. ................................................................. 3

    A.    This Court's August 17, 2009 Opinion Correctly Holds That Redbox Has
       Properly Set Forth Claims For Violation Of The Sherman Act. ............... 3

    B.    Universal's Request For A Section 1292(b) Finding Relies On
       Hypothetical Questions That Do Not Accurately Reflect The Facts
       Alleged In The Amended Complaint. ....................................................... 5

IV.     Argument. ................................................................................................ 6

    A.    Universal's Request For Section 1292(b) Certification Should Be Denied. .......... 6

       1.    Appellate Review Is Appropriate Only After a Final Judgment. ............... 6

       2.    Universal's Hypotheticals Do not Implicate Controlling Questions
           of Law. ......................................................................................... 8

       3.    No "Substantial Difference of Opinion" Exists With Respect to the
           Controlling Question, as Set Forth in Court's Opinion. ...................... 9

           a.    Universal's First Issue Provides No Basis for Certification. ......... 10

               (1)   Redbox Does Not Allege That Universal DVDs
                    Constitute a Product Market. ............................................ 10

               (2)   Redbox's Direct Allegations Of Price Increase,
                    Output Reduction and Boycott Eliminate the Need
                    for Product Market Definition. ......................................... 11

               (3)   None of Defendants' Cases Announce a Different
                    Rule of Law, They Simply Highlight Different
                    Rulings Based on Different Facts. ..................................... 12

              b.    Universal's Arguments Concerning "Intrabrand
                 Competition" and "Single Competitor" Lack Merit. ..................... 14

c.    This Court Correctly Relied on *Queen City* and *Sylvania.* ............16

B.    Certification Of Universal's Hypothetical Questions Will Not Materially Advance This Litigation. ......................................................................................17

V.    Conclusion. ........................................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bansavich v. McLane Company, Inc.,*
   No. 3:07CV702, 2008 WL 4821320 (D. Conn. Oct. 31, 2008)........................................ 15

*Bd. of Trade of City of Chicago v. United States,*
   246 U.S. 231 (1918)................................................................................................................. 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
   429 U.S. 477 (1977)............................................................................................................... 15

*Carrell v. The Shubert Organization, Inc.,*
   104 F. Supp. 2d 236 (S.D.N.Y. 2000)........................................................................ 12, 13

*Continental T.V., Inc. v. GTE Sylvania Inc.,*
   433 U.S. 36 (1977)................................................................................................................. 16

*Degulis v. LXR Biotechnology, Inc.,*
   No. 45 CIV 4204, 1997 WL 20832 (S.D.N.Y. Jan. 21, 1997)........................................ 18

*Eastman Kodak Co. v. Image Tech. Servs. Inc.,*
   504 U.S. 451 (1992)....................................................................................................... passim

*Fogarazzo v. Lehman Brothers, Inc.,*
   No. 03 Civ. 5194, 2004 WL 1555136 (S.D.N.Y. July 9, 2004) .................................... 7, 8

*Gordon v. Lewistown Hosp.,*
   423 F.3d 184 (3d Cir. 2005)................................................................................................ 9, 14

*Gottesman v. Gen. Motors Corp.,*
   268 F.2d 194 (3d Cir. 1959)................................................................................................ 18

*Habitat Ltd. v. Art of the Music, Inc.,*
   No. 07-CV-2883, 2009 WL 803380 (E.D.N.Y. Mar. 25, 2009)................................ 14, 15

*Houser v. Fox Theaters Mgmt. Corp.,*
   845 F.2d 1225 (3d Cir. 1988)............................................................................................. 14

*Hulmes v. Honda Motor Co.,*
   936 F. Supp. 2d 195 (D.N.J. 1996) .............................................................................. 7, 10

*Hurst v. City of Dover,*
   No. 04-083, 2006 WL 2347707 (D. Del. Mar. 21, 2006) ................................................ 10

*Kaiser Group Int'l Inc. v. Mittal Steel Ostrava (In re Kaiser Group Int'l Inc.)*,
   400 B.R. 140 (D. Del. 2009) ............................................................................................ 7

*Koehler v. Bank of Bermuda*,
   101 F.3d 863 (2d Cir. 1996) ............................................................................................ 7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................................... 18

*Mogul v. General Motors Corp.*,
   391 F. Supp. 1305 (E.D. Pa. 1975) .............................................................................. 12

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
   71 F. Supp. 2d 139 (E.D.N.Y. 1999) ............................................................................. 7

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*,
   468 U.S. 85 (1984) .......................................................................................................... 3

*Orson, Inc. v. Miramax Film Corp.*,
   79 F.3d 1358 (3d Cir. 1996) ........................................................................ 8, 11, 12, 14

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
   161 F. Supp. 2d 355 (D.N.J. 2001) .............................................................................. 10

*Paschall v. Kansas City Star Co.*,
   605 F.2d 403 (8th Cir. 1979) ......................................................................................... 7

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*,
   219 F.3d 92 (2d Cir. 2000) ............................................................................................. 9

*Queen City Pizza v. Domino's Pizza*,
   124 F.3d 430 (3d Cir. 1997) .................................................................................... 11, 16

*Reading Int'l, Inc. v. Oaktree Cap. Mgm't LLC*,
   317 F. Supp. 2d 1301 (S.D.N.Y. 2003) ........................................................................ 17

*Reliance Ins. Co. v. Colonial Penn Franklin Ins. Co. (In re Montgomery Ward & Co.,*
   *Inc.)*,
   No. 97-1409, 2006 WL 2989270 (D. Del. Oct. 18, 2006) .............................................. 7

*Spahr v. Leegin Creative Leather Prods., Inc.*,
   No. 2:07-CV-187, 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) .......................... 12, 13

*Trotter v. Perdue Farms, Inc.*,
   168 F. Supp. 2d 277 (D. Del. 2001) ............................................................................... 9

*United States v. Brown Univ.*,
   5 F.3d 658 (3d Cir. 1993) ............................................................................................. 12

*United States v. Visa U.S.A., Inc.*,
    344 F.3d 229 (2d Cir. 2003)............................................................................................. 9

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................................... 7

## I.     Nature And Stage Of Proceedings.

Redbox filed its Complaint on October 10, 2008.  Universal moved to dismiss Redbox's Complaint on December 8, 2008.  Redbox filed its First Amended Complaint (D.I. 30) on January 22, 2009, after which Universal supplemented its motion to dismiss on February 5, 2009. Redbox filed its opposition to the motion to dismiss on March 4, 2009, and Universal filed its reply in support of its motion on March 13, 2009.

On August 17, 2009, this Court issued its Opinion (D.I. 46), granting in part and denying in part Universal's motion.  Pertinent to this current issue, the Court denied Universal's motion with respect to Redbox's antitrust claims (Counts II-V).  On August 31, 2009, Universal filed an Answer to Redbox's antitrust claim (D.I. 52).  On September 30, 2009, Universal moved for certification to the appellate court of the Court's August 17, 2009 Opinion.  This is Redbox's opposition brief to that request.

## II.     Summary Of Opposition Argument.

Universal's request for Section 1292(b) certification should be denied.  Universal's request ignores the antitrust claim that Redbox has pled and instead substitutes abstract "questions" that ignore or misstate Redbox's pleading and this Court's Opinion, dated August 17, 2009 ("Opinion"), denying Universal's motion to dismiss.  That Universal may wish that Redbox had pled a different claim, or that the Court had ruled differently, does not provide a valid basis for the requested certification.  *See* pp. 8-9, below.

Redbox has alleged facts to establish a violation of Section 1 of the Sherman Act, including a boycott, output reduction and price increase.  Specifically, Redbox alleges a concerted effort, orchestrated by Universal, to artificially restrict supply and increase the rental price of new-release DVDs by facially anticompetitive behavior (a boycott), one purpose of which is to eliminate independent kiosk competitors.  *See, e.g.,* Amended Complaint at 56 ("Am.

Compl."). As a result of Universal's illegal actions, new-release DVDs that were renting for a dollar may more often be unavailable, or if available at all, only at a higher price. *Id.* at 78. Consumers are harmed by this unlawful activity. *Id.*

These facts make clear that Universal's hypothetical issue of whether "Universal DVDs" constitute an appropriate product market is not a controlling question of law for which Section 1292(b) certification is appropriate. *See* Defendants' Memorandum of Points and Authorities in Support of Motion to Certify August 17, 2009 Order for Section 1292(b) Interlocutory Appeal, filed September 30, 2009 ("Univ. Mem.") at 9. First, Redbox does not even allege a product market of Universal DVDs, as Universal incorrectly asserts. To the extent Redbox has pled the existence of product markets as an alternative to its evidence of direct anticompetitive effects, it has defined a new-release DVD market and copyrighted DVD market, not a Universal DVD market, as Universal posits. Second, Redbox's direct evidence dispenses with the need for market definition evidence of market power under established law. *See* generally, pp. 10-13, below.

Universal's other assertions – that Redbox only alleges harm to itself or harm to intrabrand competition only – are similarly both incorrect and insufficient to warrant certification under Section 1292(b). *See generally*, pp. 13-17, below. Redbox's well-pled facts set forth a concerted effort by Universal to arrange and implement a boycott, the purpose of which is to eliminate independent kiosk distribution. Obtaining an answer from the appellate court to a hypothetical question of whether harm to a single competitor or intrabrand competition alone is sufficient to insulate otherwise anticompetitive behavior is, at best, an irrelevancy. Answers to these questions certainly will not "control" the claims that Redbox has pled. Moreover, there is no "substantial ground for difference of opinion" as to any "controlling question of law," there

2

are only the normal issues of supplying evidence of the alleged facts sufficient to establish liability in connection with a well-developed body of law.

This Court's Opinion, properly understood, does not fully resolve any controlling or substantive issue of antitrust law. Rather, it holds only that, considering Redbox's factual allegations in full, Redbox has stated a sufficiently well-pled antitrust claim. Opinion at 9-10. There is nothing novel or unique in a district court making such a determination. Resolution of Universal's "questions," to the extent they may ever become meaningful, should await development of a factual record and the entry of a final judgment on the merits. Universal's request for Section 1292(b) certification should be denied.

## III. **Relevant Factual Background.**

### A. **This Court's August 17, 2009 Opinion Correctly Holds That Redbox Has Properly Set Forth Claims For Violation Of The Sherman Act.**

In its Opinion, this Court held that Redbox had "properly pleaded a claim for violation of Section 1 of the Sherman Act." *Id.* at 9. Citing recent Supreme Court precedent, this Court correctly found that the "essential inquiry" in this case did not turn on whether the challenged restraint was *per se* unlawful or would be judged under the Rule of Reason. *Id.* at 8 (quoting *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 104 (1984)). Rather, the "essential inquiry" would be "whether or not the challenged restraint enhance[d] competition." *Id.* To determine this issue, this Court stated, consistent with numerous cases in the Third Circuit and elsewhere, a "broad examination of the multitude of factors bearing on whether Universal's alleged acts are uncompetitive in nature" would be necessary. *Id.* at 9-10.

In reaching this result, the Court specifically recognized that the complaint alleges a short economic shelf life for new-release DVDs and that a particular DVD, whatever its intrinsic artistic merit, may not be an acceptable substitute for the latest new release. "The crux of

3

Redbox's extensive description of the market for new-release DVDs and the impact of Universal's conduct is that a consumer approaching a Redbox kiosk on the weekend after the release of 'Brüno' will not be tempted to rent 'To Kill A Mockingbird.'" Opinion at 2-3; *see* Am. Compl. at ¶ 31 (stating that thirty percent of the revenues for a new-release DVD is generated in the first two weeks following its street date; sixty percent of rental demand occurs within forty-five days of street date).   Customers, when renting or purchasing from Redbox, are able to obtain new-release DVDs at a more favorable price than at other outlets.  Opinion at 2; *see* Am. Compl. at ¶¶ 29-30.

In reaching its decision that Redbox had stated a valid antitrust claim, the Court also relied on Redbox's factual boycott allegations:  Redbox has "sufficiently pleaded that Universal has induced or otherwise convinced others [including distributors VPD and Ingram and retailers Best Buy and Wal-Mart] to boycott Redbox in distribution of Universal DVDs, producing anti-competitive effects, specifically Redbox's inability to compete in the DVD rental and sales markets of Universal DVDs." *Id.* at 7-9;[1] *see* Am. Compl. at ¶¶ 56, 83.  These facts, along with the reasonable inferences that might be drawn from them, satisfied the Court as to the sufficiency of Redbox's pleading.  Thus, the Court stated that it would proceed with a more "searching inquiry and balancing of competitive factors to the analysis of [Redbox's] claim on the merits." Opinion at 10.

---

[1]   Indeed, Universal now concedes that it directed third-party wholesalers to choke off Redbox's supply of new-release Universal DVDs.  Answer, ¶ 47.

4

**B.    Universal's Request For A Section 1292(b) Finding Relies On Hypothetical Questions That Do Not Accurately Reflect The Facts Alleged In The Amended Complaint.**

Universal seeks Section 1292(b) certification of the following two hypothetical questions:

(1) Whether, as a matter of law, allegations of harm to a single, downstream retailer resulting from a non-price vertical restraint are sufficient to satisfy the "anticompetitive effects" element of a Section 1 rule-of-reason claim under the Sherman Act; and

(2) Whether, as a matter of law, allegations of harm to intrabrand competition resulting from a non-price vertical restraint and unaccompanied by any allegations of harm to interbrand competition are sufficient to satisfy the "anticompetitive effects" element of a Section 1 rule-of-reason claim under the Sherman Act.

Univ. Mem. at 1-2. Neither hypothetical states a question relevant to this proceeding. Both attempt to recast Redbox's pleading and this Court's Opinion inaccurately.

Contrary to Universal's assumptions, the Court made no final decision on the merits concerning the substance of Universal's proffered hypotheticals. Instead, the Court simply held that the facts alleged by Redbox are sufficient to go forward with Redbox's antitrust claims. These allegations include the fact that (1) new-release DVDs have a limited economic shelf life, Opinion at 2; Am. Compl. at ¶¶ 38-40; (2) the cross-elasticity of demand for new-release DVDs in different categories or genres is low, *i.e.*, a consumer looking for a new-release comedy DVD is unlikely to accept a back catalog drama if that week's new-release comedy is unavailable, Opinion at 2-3 (The "crux of Redbox's extensive description of the market for new-release DVDs and the impact of Defendant's conduct is that a consumer approaching a [Redbox] kiosk on the weekend after the release of 'Brüno' will not be tempted to rent 'To Kill a Mockingbird'"); Am. Compl. at ¶¶ 32-41, 77-79; (3) Universal seeks to avoid competition with other studios in the weekly markets for new-release DVDs by timing its releases to avoid having competing new-release DVDs available to the public on or around the street date of a Universal new-release, Am. Compl. at ¶ 39; (4) the boycott imposed by Universal is designed to either

5

eliminate distribution of new-release DVDs through independent kiosks, creating "an artificial shortage of product and a correspondingly high artificial price" for rental or re-sale on new-release DVDs, Am. Compl. at ¶ 56, *see also* ¶ 83; and (5) Universal's unlawful acts harm consumers, Redbox and other independent kiosk operators, have no pro-competitive benefits and are designed to eliminate independent kiosk competitors to clear the way for Universal's own higher-priced distribution scheme or eliminate this channel of distribution altogether, Am. Compl. at ¶ 56, 77-79. Universal simply misstates Redbox's pleading and the Court's ruling when it asserts things like (1) this Court "allowed Redbox's claim to go forward despite the fact that Redbox alleged harm only to one retail competitor and alleged harm only to intrabrand competition," *id.* at 6; and (2) "[e]ach week, Universal is competing with Disney, Paramount, and other studios . . . to get consumers to watch and buy its movies," *id.* at 4. These assertions simply ignore or misstate the positions Redbox has put forth and the facts it has alleged (*e.g.*, the lack of competition, by design, in the market for new-release DVDs).

Redbox's factual allegations, as set forth in Opinion and Redbox's Amended Complaint, plainly state a viable claim. Pursuing certification of Universal's hypothetical questions, which fail to state accurately the matters at issue, is not an appropriate use of the courts' or the parties' resources. Universal claims it seeks a "prompt resolution" of this matter. If so, it should cooperate with Redbox's efforts to proceed with discovery. Its request for interlocutory appeal should be denied.

## IV.   Argument.

### A.   Universal's Request For Section 1292(b) Certification Should Be Denied.

#### 1.   Appellate Review Is Appropriate Only After a Final Judgment.

An established tenet of federal procedure is that appellate review should normally await a final judgment. *Fogarazzo v. Lehman Brothers, Inc.*, No. 03 Civ. 5194, 2004 WL 1555136, at

*1 (S.D.N.Y. July 9, 2004) (*citing Koehler v. Bank of Bermuda*, 101 F.3d 863, 865-66 (2d Cir. 1996)). Certification pursuant to Section 1292(b) should be granted sparingly and only in exceptional circumstances. *Kaiser Group Int'l Inc. v. Mittal Steel Ostrava (In re Kaiser Group Int'l Inc.)*, 400 B.R. 140, 145 (D. Del. 2009) (*citing Hulmes v. Honda Motor Co.*, 936 F. Supp. 2d 195, 208 (D.N.J. 1996)); *Reliance Ins. Co. v. Colonial Penn Franklin Ins. Co.* (*In re Montgomery Ward & Co., Inc.*), No. 97-1409, 2006 WL 2989270, at *1 (D. Del. Oct. 18, 2006) (*citing Hulmes*, 936 F. Supp. 2d at 208).

A party seeking certification must demonstrate that: (1) the order from which the appeal is sought involves "a controlling question of law," (2) as to which there is "substantial ground for difference of opinion" and (3) "that an immediate interlocutory appeal may materially advance the ultimate termination of the litigation . . ." 28 U.S.C. § 1292(b). Even if all three prerequisites are met, "the decision to certify an order for appeal under Section 1292(b) lies within the sound discretion of the court." *Kaiser Group Int'l Inc.*, 400 B.R. at 145; *Reliance Ins. Co.*, 2006 WL 2989270, at *1. Certification of an order denying a motion to dismiss pursuant to Section 1292(b) should be denied where sufficiency of the legal concepts pleaded are dependent on development of the factual record. *See Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406-07 (8th Cir. 1979) (holding that district court improvidently granted Section 1292(b) certification of Sherman Act claim because the factual record was not sufficiently developed to permit the appellate court to render a meaningful opinion); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 166-67 (E.D.N.Y. 1999) (assuming statutory criteria for Section 1292(b) certification met but denying certification because issue was a highly factual inquiry not susceptible to answer before discovery). There is no "substantial ground for difference of opinion" as to the controlling law in this case. The factual record has yet to be

developed in this case, and the hypothetical questions posed by Universal ignore, distort or misstate the key factual allegations of the Amended Complaint.

### 2. Universal's Hypotheticals Do Not Implicate Controlling Questions of Law.

This Court's Opinion correctly states that the critical legal issue to be addressed in this case: do the challenged restraints "regulate" (and therefore promote) competition or do they "suppress" or "destroy" competition. Opinion at 8. Numerous cases, including clear and unambiguous Third Circuit authority, hold, consistent with this Court's Opinion, that resolution of such issues requires a "broad examination of the multitude of factors" bearing on whether the challenged acts are "uncompetitive in nature":

> To determine that question *the court must ordinarily consider the facts peculiar to the business* to which the restraint is applied; its condition before and after the restraint was imposed; *the nature of the restraint and its effect,* actual or probable. *The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy,* the purpose or end sought to be attained, *are all relevant facts.*

*Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1367 (3d Cir. 1996) (emphasis added) (*citing Bd. of Trade of City of Chicago v. United States*, 246 U.S. 231, 238 (1918)).

Thus, the law that supports the Court's Opinion is well-established. The Court correctly found that Redbox has stated a claim that should be resolved only after the parties submit their evidence. This type of determination is one that district courts make every day. *Cf. Fogarazzo*, 2004 WL 1555136, at *2 (denying a requested 1292(b) finding because the court made no rulings on the merits; it simply held that the allegations in the complaint were sufficiently particular). There is no valid reason for "reconsideration" of this Court's Opinion by the appellate court.

Moreover, Universal's two questions are both insufficient and inaccurate. Redbox alleges much more than simply harm to a single downstream retailer, or harm only to intrabrand

competition. Redbox alleges that Universal has orchestrated a boycott of independent kiosk

retailers, including Redbox, the effect of which has been to restrict the supply of new-release

DVDs available to consumers and impose artificially high prices for such products. Opinion at

7, 9; Am. Compl. at ¶¶ 56, 83, 84; but compare Univ. Mem. at 10-11. Universal's motive in

implementing the boycott is not to enhance competition but rather to eliminate a new and

efficient distribution channel for new-release DVDs to the detriment of consumers. Am. Compl.

at ¶¶ 56, 68. These facts are more than sufficient to demonstrate the anticompetitive effects that

Universal claims are missing from this case. *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 210

(3d Cir. 2005) (to establish anticompetitive effects, the plaintiff must show that the restraint is

"facially anticompetitive" or that "its enforcement reduced output, raised prices, or reduced

quality"); *Eastman Kodak Co. v. Image Tech. Servs. Inc.*, 504 U.S. 451, 478 (1992) ("The

alleged conduct – higher service prices and market foreclosure – is facially anticompetitive and

exactly the harm that antitrust laws aim to prevent."); *United States v. Visa U.S.A., Inc.*, 344 F.3d

229, 241-43 (2d Cir. 2003) (rules for vendor participation causing reduction in output and

consumer choice and anticompetitive effect); *Primetime 24 Joint Venture v. Nat'l Broad. Co.*,

219 F.3d 92, 103-04 (2d Cir. 2000) (refusing to dismiss where complaint alleged agreement

resulting in restricted output, increased prices and reduced quality to consumer).

### 3. No "Substantial Difference of Opinion" Exists With Respect to the Controlling Question, as Set Forth in Court's Opinion.

To establish a substantial ground for difference of opinion, a party must show the

existence of significant legal authority that contradicts the rule of law applied by the district

court's ruling. *Trotter v. Perdue Farms, Inc.*, 168 F. Supp. 2d 277, 288 (D. Del. 2001) (declining

to certify an issue for appeal even though it was one of first impression). "A party's

disagreement with a district court's ruling does not constitute 'a substantial ground for a

difference of opinion' within the meaning of 1292(b)." *Hurst v. City of Dover*, No. 04-083,

2006 WL 2347707, at *2 (D. Del. Mar. 21, 2006) (*citing P. Schoenfeld Asset Mgmt. LLC v.

Cendant Corp.*, 161 F. Supp. 2d 355, 360 (D.N.J. 2001)). "The difference of opinion must arise

out of genuine doubt as to the correct legal standard." *Id.* (*citing Hulmes v. Honda Motor

Co., Ltd.*, 936 F. Supp. 195, 207 (D.N.J. 1996)). Universal has failed to show there is any

genuine doubt as to the legal standard that this Court used.

Instead, Universal tries to fabricate three issues the Court purportedly got wrong, and

characterize these as "controlling questions of law": (1) that Universal DVDs cannot be a

"relevant product market for antitrust purposes," (2) that harm to a "one competitor alone" can

never be an anticompetitive effect and (3) harm to "intrabrand competition alone" can, under no

circumstances, constitute an anticompetitive effect. Univ. Mem. at 9-11. Universal's arguments

are not well-supported and are without merit.

### a.     Universal's First Issue Provides No Basis for Certification.

#### (1)     Redbox Does Not Allege That Universal DVDs Constitute a Product Market.

Universal's first issue, whether Universal DVDs comprise the relevant product market,

Univ. Mem. at 9, does not present a controlling question of law as to which there is substantial

ground for difference of opinion. Universal claims that this Court erred in finding that

"Universal DVDs" constitute the relevant product market, citing Opinion at 9; but *see* Opinion at

2-3 (discussing Redbox's "extensive description" of the "market for new-release DVDs").

Redbox does not claim, however, that Universal DVDs constitute a product market; it claims

that, to the extent market definition is relevant, product markets may be comprised of either a

market for single, unique copyrighted works on DVD, or in the alternative, a weekly market for

new-release DVDs, with relevant sub-markets by category or genre. Am. Compl. at ¶¶ 70-71;

77-78. Redbox's Section I claim is also based on Universal's effort to illegally combine, contract and conspire with others to eliminate the independent kiosk sale and rental business, including its orchestration of a boycott of Redbox by distributors, retailers, and others. *Id.* at ¶¶ 4, 48-51, 68. Universal's attempt to re-cast Redbox's claim into a single phrase lifted out of context from the Court's Opinion is unfair and disingenuous.

But even if Redbox had alleged that Universal DVDs were the sole relevant market, there would not be a "substantial ground for a difference of opinion" as to controlling law warranting Section 1292(b) certification at this stage in the litigation. Both the Supreme Court and this Circuit have recognized that a relevant product may be limited a particular brand if that brand is not reasonably interchangeable with others. *Eastman Kodak*, 504 U.S. at 478 (recognizing a market limited to Kodak products); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 438-39 (3d Cir. 1997). This is an issue of proof, not controlling law.

> **(2)** **Redbox's Direct Allegations Of Price Increase, Output Reduction and Boycott Eliminate the Need for Product Market Definition.**

"In rule-of-reason cases, the plaintiff bears the initial burden of showing the alleged combination or agreement produced adverse, anticompetitive effects within the relevant product and geographic markets." *Orson*, 79 F.3d 1358. "The *plaintiff may satisfy this burden by proving the existence of actual anticompetitive effects*, such as reduction of output, increase in price . . ." *Id.* (emphasis added). Here, Redbox's Amended Complaint alleges facts demonstrating direct anticompetitive effects, including artificial constriction of supply, price increases, and a boycott resulting from Universal's challenged actions. In light of such allegations, no separate market definition is required. Third Circuit precedent plainly holds that the existence of Universal's market power – the relevant issue to be determined – may be directly demonstrated by its ability to restrict supply and raise prices above a competitive level –

exactly what Redbox has alleged. *Id.* New-release or copyrighted DVDs that were renting for

one dollar will now cost more. Where direct evidence of the power to raise price above the

competitive level exists, formal market definition as a means of demonstrating market power is

simply not an element of proof required to establish a violation of Section 1 of the Sherman Act.

*Id.*[2]

> **(3)** **None of Defendants' Cases Announce a Different Rule of Law, They Simply Highlight Different Rulings Based on Different Facts.**

None of Universal's cases stand for a contrary legal doctrine. For example, *Mogul v.*

*General Motors Corp.*, 391 F. Supp. 1305, 1307 (E.D. Pa. 1975), Univ. Mem. at 9, stands for the

proposition that on motion for summary judgment in the absence of countervailing evidence,

simply labeling a particular product as "unique" does not suffice to define an appropriate product

market. *Mogul*, 391 F. Supp. at 1313. In reaching this conclusion, the court found that the

plaintiff had failed to present the necessary evidence that a Cadillac was not interchangeable with

other luxury cars. *Id.* at 1312-13. The issue was decided not as a pleading matter, but as a

matter of proof. As this Court found, however, Redbox has stated facts that, when backed with

evidence, will establish that new-release DVDs, or alternatively, single copyrighted DVDs,

comprise relevant product markets, characterized by high cross-elasticity of demand and a

corresponding ability for Universal to raise its prices by restricting supply.

Universal further posits that *Spahr v. Leegin Creative Leather Prods., Inc.*, No. 2:07-CV-

187, 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) and *Carrell v. The Shubert Organization,*

*Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000) stand for controlling legal doctrine that courts may

---

[2]    The Amended Complaint also alleges liability under the "quick look" analysis. Am. Compl. at ¶¶ 65-68. "This abbreviated rule applies where . . . a full-blown industry analysis is not required to demonstrate the anticompetitive character of an inherently suspect restraint." *Orson*, 79 F.3d at 1367, n.9; *citing United States v. Brown Univ.*, 5 F.3d 658, 669 (3d Cir. 1993).

never, under any state of facts, find that one brand comprises a market. But in *Spahr*, the court specifically recognized the principle that one brand of a product can, under appropriate circumstances, constitute a relevant market "where the product is unique and no reasonable substitutes exist." 2008 WL 3914461 at *11. That might accurately describe Universal's upcoming release of "Brüno" on DVD (or Warner's upcoming release of the latest "Harry Potter" DVD). According to the *Spahr* court, the plaintiff there failed to allege why the handbags at issue in that case were not reasonably interchangeable with other accessories. *Id.* In contrast, Redbox has identified why there are no acceptable substitutes for certain copyrighted new-release DVDs.[3] Redbox has alleged facts that demonstrate that by defendants' design, no reasonable substitutes will exist during the time period when demand is highest for a particular new-release Universal DVD. *Compare* Opinion at 2-3; Am. Compl. at ¶ ¶ 38-41, 77 *and contrast with* Univ. Mem. at 4 (claiming that Universal competes each week with other studios to get consumers to watch "its movies," an assertion that is contrary to the just-stated, well-pled facts.) Thus, Redbox expects its evidence will demonstrate that new-release DVDs subject to Universal's boycott do indeed constitute a relevant market "where the product is unique and no reasonable substitutes exist." Again, this is an issue for proof, not an issue of conflicting legal doctrines.

---

[3]     In *Carrell*, similarly, the plaintiff alleged that "Cats" (the musical's) face make-up products were "*sui generis*" and therefore not interchangeable with "any other available product." *Id.* at 264. After stating that a plaintiff must allege a "plausible basis for finding that commodities are in some way unique to establish a relevant market," the court stated that nothing in the complaint explains why make-up associated with other Broadway shows or other forms of entertainment are not reasonably interchangeable with products associated with "Cats." *Id.* Mere consumer preference was not sufficient. *Id.* Here, however, Redbox has alleged specific facts establishing uniqueness.

**b.      Universal's Arguments Concerning "Intrabrand Competition" and "Single Competitor" Lack Merit.**

Universal claims that alleged harm to a single competitor or the complete destruction of intrabrand competition at the retail level can never, as a matter of law, constitute an anticompetitive effect. This argument is incorrect.

The Third Circuit has specifically held that allegations of restricted output, increased prices and reduced quality are sufficient to demonstrate anticompetitive effects. *Gordon*, 423 F.3d at 210 (to establish anticompetitive effects, the plaintiff must show that the restraint is "facially anticompetitive" or that "enforcement reduced output, raised prices, or reduced quality"); *see also Eastman Kodak Co.*, 504 U.S. at 478 ("[t]he alleged conduct – higher service prices and market foreclosure – is facially anticompetitive and exactly the harm that antitrust laws aim to prevent"). And even if Universal's hypothetical accurately summarized the relevant facts from the pleadings, no case holds that a defendant is insulated from liability in every case in which there are "allegations of harm to a single downstream retailer resulting from a non-price vertical restraint" or "allegations of harm to only intrabrand competition resulting from a non-price vertical restraint." Univ. Mem. at 1. Even under the inaccurate hypothetical questions posed by Universal, Redbox states a valid antitrust claim.

Universal fails to identify any authority from the Third Circuit (or elsewhere) holding that the destruction of all intrabrand competition is *per se* lawful. In fact, the Third Circuit, like most circuits, resolves such issues only after consideration, based on a full factual record, of whether the challenged restriction promotes, or harms, competition. *See, e.g., Orson*, 79 F.3d at 1371-72; *Houser v. Fox Theaters Mgmt. Corp.*, 845 F.2d 1225, 1232-33 (3d Cir. 1988).[4]

---

[4]      Universal also relies on *Habitat Ltd. v. Art of the Music, Inc.*, No. 07-CV-2883, 2009 WL 803380 (E.D.N.Y. Mar. 25, 2009), to support its claim. But in *Habitat*, the court simply dismissed the complaint because the plaintiff's allegations were a "run-of-the-mill

To support its assertion that harm to a single competitor can never constitute an

anticompetitive effect, Universal cites *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S.

477 (1977) and *Bansavich v. McLane Company, Inc.*, No. 3:07CV702, 2008 WL 4821320

(D. Conn. Oct. 31, 2008). Univ. Mem. at 10. In *Brunswick*, the Supreme Court directed a

verdict for the defendants based on its conclusion, after examining evidence presented at a trial,

that the plaintiff was seeking damages based on a theory that undermined competition, namely

that the plaintiff claimed it was being "deprive[d]" of the benefits it would have received from

"increased concentration" had its competitor gone out of business. *Brunswick*, 429 U.S. at 488.

In *Bansavich*, a tying case, the plaintiff alleged only the "conclusion" that the challenged

tying arrangement had anticompetitive effects on competing sellers of the tied product

(cigarettes) but alleged no supporting facts. *Bansavich*, 2008 WL 4821320, at 4. Absent any

supporting facts, the claim was not "plausible" under *Twombly*. *Id.* As set forth above, Redbox

has set forth specific facts showing why Universal's efforts will have an anticompetitive effect

both with respect to reduction in output and the creation of an artificially high price for new-

release DVDs to consumers. Am. Compl. at ¶ 56. Both *Brunswick* and *Bansavich* are not in

disagreement with this Court's determination that Redbox's factual allegations pass the *Twombly*

"plausibility" standard.[5]

---

exclusive distributorship controversy, where a former exclusive distributor is attempting to
protect its competitive position vis a vis its supplier," noting that the plaintiff had not even
alleged that customers would have to pay more for the product. 2009 WL 803380, at *6, 8. But,
as stated above, Redbox has alleged that, and far more. *See* Am. Compl. at ¶¶ 45-51, 56, 83.

[5]    To the extent Universal seeks to take advantage of cases where defendants submit
evidence that establishes specific pro-competitive benefits, *see* Univ. Mem. at 11, Universal
offers no explanation for how preventing Redbox from purchasing a DVD from Best Buy would
further "competition" or have any other pro-competitive effect. In any event, such argument by
Universal must await factual development and should not be decided, as Universal contends, as a
matter of law.

c.   **This Court Correctly Relied on *Queen City* and *Sylvania*.**

Universal also argues that this Court incorrectly applied both *Queen City Pizza v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997) and *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977), *see* Univ. Br. at 11-12, claiming that (1) the Court's proposed one-brand market is "facially implausible" under *Queen City* and (2) that *Sylvania* requires allegations of harm to interbrand competition, which it claims Redbox has not done.  Universal is mistaken on both counts.

*First*, *Queen City* does not hold that a single brand can never be a market.  To the contrary, *Queen City* specifically recognized that the relevant market may be limited to a particular brand when the brand is not reasonably interchangeable with another product. 124 F.3d at 438 n.7 (citing authority recognizing that a patent could create a situation where a market was limited to a particular brand) and 439 (discussing *Eastman Kodak Co.*, 504 U.S. at 478, which held that Kodak parts were their own market).  While *Queen City* did reject a plaintiff's attempt to limit the relevant market to Domino's approved pizza ingredients, it did so because the evidence showed that ingredients were reasonably interchangeable with other brands of pizza ingredients and because *Queen City* rejected the concept that a contractual restriction could create a market – in that case an agreement to only buy pizza ingredients approved by Domino's. *Id.* at 440-42.

*Second*, with respect to *Sylvania*, there is no statement in that case that allegations of harm to interbrand competition must exist in every Section 1 case. *Sylvania* merely holds that vertical non-price restrictions should be judged under the rule of reason, 433 U.S. at 59.  Under the rule of reason, *Sylvania* holds that vertical non-price restraints that promote interbrand competition even though they may diminish intrabrand competition are not prohibited, *id.* at 51-57.  Indeed, if *Sylvania* truly required allegations of harm to interbrand competition in every

16

case, monopolistic and oligopolic industries devoid of interbrand competition to begin with –
much like the monopoly power over new-release DVDs – would never be subject to antitrust
laws. *Id.* at 52 n.19 (recognizing that certain markets are devoid of competition).

Redbox has alleged that Universal is restricting output and artificially inflating prices,
thereby injuring both Redbox and consumers. That is enough at this point in this proceeding.
*Eastman Kodak Co.*, 504 U.S. at 478 (higher prices for Kodak parts is an anticompetitive effect
that the antitrust laws aim to protect); *Reading Int'l, Inc. v. Oaktree Cap. Mgm't LLC*,
317 F. Supp. 2d 1301,1319 (S.D.N.Y. 2003) (restricted output and higher prices for consumers
constitutes antitrust injury). Universal has identified no case holding that, given the facts set
forth in the Amended Complaint, Redbox's antitrust claim should not proceed. No "substantial
ground for difference of opinion" as to "a controlling question of law" exists here. Universal's
request for a 1292(b) finding should be denied.

### B.    Certification Of Universal's Hypothetical Questions Will Not Materially Advance This Litigation.

By now it should be clear that certification of the questions Universal posits will not
materially advance resolution of this matter. Obtaining "answers" to questions that ignore the
real matters at issue is not an appropriate use of Court resources and will not move this case
forward.

Because the Opinion addressed only whether Redbox had alleged a *Twombly*-standard
"plausible" claim, certification of an interlocutory appeal is inappropriate. Courts have
disfavored interlocutory review of rulings on pleadings, except where novel legal questions are
implicated:

> It would seem axiomatic that appeals challenging pre-trial rulings upholding
> pleadings against demurrer could not be effective in bringing nearer the
> termination of litigation; on the contrary, they only stimulate the parties to more
> and greater pre-trial sparring apart from the merits. We are not accustomed to

17

criticize or reverse such pleading decisions, and the chance of reversal here seems
so slight as to be quite negligible. Further, a reversal at most could lead only to a
remand for repleading, with possibilities of further interlocutory appeals
thereafter.

*Degulis v. LXR Biotechnology, Inc.*, No. 45 CIV 4204, et al., 1997 WL 20832, at *3 (S.D.N.Y.

Jan. 21, 1997) (*quoting Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (3d Cir. 1959)).

One final point should be made. Universal claims the alleged "chilling" effect of this

litigation justifies the need for immediate interlocutory appellate review. Universal cites

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) for the

proposition that mistaken inferences in "certain antitrust cases" are costly because they chill the

competitive conduct the antitrust laws are designed to protect. Univ. Mem. at 14. *Matsushita*,

however, was a predatory pricing case. In that context, a mistaken inference would be costly

because it might very well have discouraged defendants from charging *lower* prices. 475 U.S. at

594. But this case is not that type of case. Redbox's case alleges artificially restricted sales of

new-release DVDs resulting in artificially *high* prices. To the extent that Redbox continues to

challenge this restraint, the competitive marketplace is enhanced, and consumers will be helped

by the lower prices Redbox and the other independent kiosk vendors charge, not harmed.

*Matsushita* is inapposite.

## V.    Conclusion.

For all the foregoing reasons, Universal's requested Section 1292(b) certification should
be denied.

Of Counsel:

Charles S. Bergen
George R. Dougherty
Michael S. Gulland
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
(312) 704-7700

Frederick W. Stein
REDBOX AUTOMATED RETAIL, LLC
One Tower Lane, Suite 1200
Oakbrook Terrace, Illinois 60181
(630) 756-8255

Dated:  October 21, 2009

Respectfully submitted,


  /s/   Henry E. Gallagher, Jr.
Henry E. Gallagher, Jr. (No. 495)
Chad S.C. Stover (No. 4919)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 North Orange Street
Wilmington, DE  19801
(302) 658-9141
hgallagher@cblh.com
cstover@cblh.com

*Attorneys for Plaintiff*
*Redbox Automated Retail, LLC*

## CERTIFICATE OF SERVICE

I, hereby certify that on October 21, 2009, I caused the a copy of **REDBOX AUTOMATED LLC'S ANSWERING BRIEF IN OPPOSITION TO UNIVERSAL'S REQUEST FOR A SECTION 1295(b) FINDING** to be filed electronically with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following, and I have also caused the foregoing to be sent to the following in the manner indicated below:

**VIA E-MAIL**

R. Montgomery Donaldson
RDonaldson@mmwr.com
Lisa Zwally Brown
lzbrown@mmwr.com
Montgomery, McCracken,
Walker & Rhoads, LLP
1105 N. Market St., Suite 1500
Wilmington, DE 19801

**VIA EMAIL**

Paul H. Zoubek
PZoubek@mmwr.com
R. Monica Hennessy
Mhennessy@mmwr.com
Montgomery, McCracken,
Walker & Rhoads, LLP
Liberty View
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002

Glenn D. Pomerantz
glenn.pomerantz@mto.com
David C. Dinielli
david.dinielli@mto.com
Munger, Tolles & Olson LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560

_/s/ Henry E. Gallagher_
Henry E. Gallagher, Jr. (DE Bar ID #495)