## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REDBOX AUTOMATED RETAIL, LLC, | |
| Plaintiff | |
| v. | Civil Action No. 08-766 (RBK) |
| UNIVERSAL STUDIOS HOME ENTERTAINMENT, LLC, UNIVERSAL CITY STUDIOS, LLLP, UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP, and FOCUS FEATURES, LLC, | |
| Defendants. | |

## <u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO CERTIFY AUGUST 17, 2009 ORDER FOR § 1292(b) INTERLOCUTORY APPEAL</u>

OF COUNSEL:

Glenn D. Pomerantz (CA Bar No. 112503)
David C. Dinielli (CA Bar No. 177904)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560

Paul H. Zoubek (PA Bar No. 36716)
R. Monica Hennessy (PA Bar No. 77928)
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, NJ  08002

R. Montgomery Donaldson (DE Bar 4367)
Lisa Zwally Brown (DE Bar 4328)
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
1105 N. Market St., Suite 1500
Wilmington, DE  19801
(302) 504-7800
*Counsel for Defendants*
*Universal Studios Home Entertainment, LLC,*
*Universal City Studios, LLLP, Universal City*
*Studios Productions, LLLP, and Focus*
*Features LLC*

Dated:  November 9, 2009

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..........................................................................................................1

II.     ARGUMENT ...............................................................................................................2

        A.      Redbox Has Not Properly Alleged A Horizontal Group Boycott Claim ..............3

        B.      Redbox Must Allege "Anticompetitive Effects" And The Court's
                Conclusion That It Has Done So Despite The Absence Of Allegations Of
                Harm To Interbrand Competition Is Contrary To The Great Weight Of
                Controlling Authority ..........................................................................................5

        C.      Redbox Misunderstands The Principles Of Product Market Definition In
                Sherman Act Section 1 Cases ..............................................................................7

                1.      Redbox Cannot Avoid The Requirement That It Plead A Properly
                        Defined Market .......................................................................................8

                2.      The Proposed Product Markets Identified By Redbox Are
                        Untenable As A Matter Of Law ...............................................................9

                        a.      Copyrights Do Not Necessarily Define Product Markets ............10

                        b.      Consumer Preference Alone Does Not Support A Market
                                Definition .................................................................................10

                        c.      Kodak Does Not Support A Single Brand Market
                                Definition In This Case .............................................................12

III.    CONCLUSION ..........................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*A.I. Root Co. v. Computer Dynamics, Inc.*,
806 F.2d 673 (6th Cir. 1986) ............................................................ 10

*Allen-Myland, Inc. v. International Business Machines Corp.*,
33 F.3d 194 (3d Cir. 1994) ............................................................. 11

*by Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ...................................................................... 12

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
433 U.S. 36 (1977) ......................................................................... 6

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*,
854 F.2d 802 (6th Cir. 1988) ............................................................ 7

*Discon Inc v. NYNEX Corp.*,
86 F. Supp. 2d 154 (W.D.N.Y. 2000) ................................................ 9

*Eastman Kodak Co. v. Image Tech. Servs. Inc.*,
504 U.S. 451 (1992) .................................................................. 8, 12

*Fray Chevrolet Sales, Inc. v. General Motors Corp.*,
536 F.2d 683 (6th Cir. 1976) ............................................................ 5

*Generac Corp. v. Caterpillar, Inc.*,
172 F.3d 971 (7th Cir. 1999) .......................................................... 10

*Genetic Systems Corp. v. Abbott Labs.*,
691 F. Supp. 407 (D.D.C. 1988) .................................................... 4, 5

*Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*,
960 F. Supp. 701 (S.D.N.Y. 1997) ............................................. 12, 13

*H & B Equipment Co. Inc. v. International Harvester Co.*,
577 F.2d 239 (5th Cir. 1978) ............................................................ 6

*Hack v. President and Fellows of Yale College*,
237 F.3d 81 (2d Cir. 2000) ............................................................ 12

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
547 U.S. 28 (2006) ........................................................................ 10

*K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*,
61 F.3d 123 (2d Cir. 1995) .............................................................. 6

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
359 U.S. 207 (1959) ........................................................................ 3

*PepsiCo, Inc. v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2002) ............................................................ 4

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997) ..................................................... 10, 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Re-Alco Industries, Inc. v. National Center for Health Education, Inc.*,
  812 F. Supp. 387 (S.D.N.Y. 1993) ....................................................................... 9

*Reading International, Inc. v. Oaktree Capital Management LLC*,
  No. 03 Civ. 1895, 2007 WL 39301 (S.D.N.Y. Jan. 8, 2007) ............................... 11

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
  532 F.3d 963 (9th Cir. 2008) .............................................................................. 10

*Sheridan v. Marathon Petroleum Co., LLC*,
  530 F.3d 590 (7th Cir. 2008) .............................................................................. 10

*Smith v. Pro Football, Inc.*,
  593 F.2d 1173 (D.C. Cir. 1978) ............................................................................ 4

*Spahr v. Leegin Creative Leather Products, Inc.*,
  No. 2:07-CV-187, 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) ...................... 13

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) ............................................................................ 4, 9

*Universal Amusements Co. v. General Cinema Corp.*,
  635 F. Supp. 1505 (S.D. Tex. 1985) ................................................................. 3, 4

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*,
  516 F. Supp. 2d 270 (S.D.N.Y. 2007) ................................................................... 5

*Westman Comm'n Co. v. Hobart Int'l, Inc.*,
  796 F.2d 1216 (10th Cir. 1986) ............................................................................ 4

## FEDERAL STATUTES

28 U.S.C. § 1292(b) ............................................................................................ 14

## FEDERAL RULES

Fed. R. Civ. Proc. 12(b)(6) ................................................................................... 7

## I.      INTRODUCTION

If the Third Circuit were to review the antitrust arguments in Redbox's Opposition Brief, it would see that these arguments are antithetical to virtually every fundamental legal principle embodied in the substantive antitrust laws and the pleading requirements now required by *Twombly* and *Iqbal*.  That is why Universal requests immediate appellate review.  Redbox's errors, and the consequences of those errors for the validity of its antitrust claim, could not be clearer:

- **Redbox has not alleged a horizontal "group boycott":** Redbox tries to label its claim a "group boycott" even though it has not alleged, and does not claim to have alleged, any horizontal agreement at any level of the distribution chain.  Redbox does not allege, for example, that Universal has agreed with any of its studio competitors (Disney, Fox, Warner, etc.); that Ingram has agreed with any of its distributor competitors (VPD, etc.); or that WalMart has agreed with any of its retailer competitors (Target, Best Buy, etc.).  This case is nothing more than an alleged vertical agreement between a supplier, Universal, and its distributors or its retail customers.

- **Redbox has not alleged that the vertical agreements it alleges have any "anticompetitive effects":** Nowhere in Redbox's Opposition Brief does it point to a single allegation in its Complaint that alleges harm to <u>interbrand</u> competition, which the law requires to be pled to satisfy the "anticompetitive effects" element of an antitrust claim based on a vertical agreement.  There is simply no allegation that competition between Universal and Disney, Warner Bros. or any other motion picture studios -- in other words, interbrand competition -- is harmed in any way by Universal's alleged agreements affecting Redbox.  Case after case says

that without an allegation of an effect on interbrand competition, an antitrust claim based on a vertical agreement like the one Redbox alleges here fails as a matter of law.

- **Redbox has not alleged a relevant product market:**  This is another independent basis for immediate review.  Redbox's efforts to define its product market as "new release DVDs" or "Universal DVDs" are insufficient as a matter of law.  Redbox ignores binding Supreme Court precedent, erroneously relies on other unrelated Supreme Court case law, and at one point wrongly argues that it *need not even define* a relevant product market in this case. Redbox is wrong on all counts.

The Opposition confirms that Redbox is another in a long line of "jilted distributors" that brings an antitrust claim because a supplier no longer will supply it with product.  Courts routinely dismiss "jilted distributor" claims at the outset, because they thwart normal competitive decision-making, which permits a supplier such as Universal to decide for itself how it wants to distribute its products.  Nothing in the antitrust laws requires Universal to sell DVDs to Redbox on the terms that Redbox demands, or at all.  As Universal's Motion to Certify makes clear, this Court's initial ruling on Universal's Motion to Dismiss presents controlling issues going to the very core of antitrust law -- issues such as what constitutes harm to competition in a vertical restraint case -- and about which many courts have expressed a substantial difference of opinion with the ruling of this Court.  Appellate resolution of these controlling issues likely would result in the termination of the litigation.  Universal thus respectfully requests that the Court certify its Order for interlocutory review.

## II.    ARGUMENT

Redbox's Opposition obfuscates the relevant antitrust issues by quoting inflammatory language from a variety of cases that have nothing to do with this matter factually or legally.

9210344.3

Redbox's liberal use of antitrust buzzwords cannot make up for the fact that it has not pleaded, and the Court's Order does not identify, facts that could support a finding of injury to competition in a relevant antitrust product market.  Redbox also dismisses as "hypothetical" the two issues Universal identified as worthy of immediate interlocutory review -- whether it is sufficient to allege harm to a single downstream retailer without alleging harm to competition in the marketplace as a whole, and whether it is sufficient to allege merely harm to intrabrand competition without alleging harm to interbrand competition.  As described below, theses two issues are not "hypothetical"; they constitute the core legal questions framed by the Court's review of Redbox's allegations, and the answers to these questions undoubtedly will determine if this case can proceed or must be dismissed.  Immediate consideration by the Third Circuit will serve the administration of justice and conserve the Court's resources.

A.    <u>Redbox Has Not Properly Alleged A Horizontal Group Boycott Claim</u>

Redbox takes great pains in its Opposition to convince this Court that it has alleged a group boycott, apparently in order to avoid the pleading standards applicable to the garden-variety vertical restraint case that it actually has attempted to allege.  The Court should be especially wary of this effort.  As one court has noted, using the term "boycott" is the "equivalent of yelling 'fire' in the halls of traditional antitrust jurisprudence." *Universal Amusements Co. v. General Cinema Corp.*, 635 F. Supp. 1505, 1523 (S.D. Tex. 1985).  This case could not be a better example of that proposition, as Redbox employs all of the standard antitrust jargon when referring to its "boycott" claim, yet fails to allege any of the necessary facts supporting such a claim.

Boycotts are, at base, concerted refusals by traders to deal with other traders.  *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207 (1959).  As with all Section 1 claims, a boycott

requires the existence of the following two elements: concerted action and an unreasonable restraint of trade.  But the concerted action at issue in a boycott case must be horizontal in nature, thereby giving the boycott its pernicious effect.  *Universal Amusements*, 635 F. Supp. at 1523 ("[C]ourts center their harsh *per se* condemnation of boycotts upon the pernicious anticompetitive effect of firms depriving *their competitors* of necessary supplies or customers."); *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1179-80 (D.C. Cir. 1978) (noting that the "group boycott" designation "is properly restricted to concerted attempts by competitors to exclude horizontal competitors; it should not be applied, and has never been applied by the Supreme Court, to concerted refusals that are not designed to drive out competitors but to achieve some other goal").

"Thus, in the absence of concerted *horizontal* action, a group boycott cannot be alleged." *Genetic Systems Corp. v. Abbott Labs.*, 691 F. Supp. 407, 417 (D.D.C. 1988) (collecting cases) (emphasis added); *see also Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1224 n.1 (10th Cir. 1986) ("For a group boycott to exist, there must be an agreement among conspirators whose market positions are horizontal to each other."); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 110 (2d Cir. 2002) (holding that, notwithstanding the horizontal effects of a series of vertical agreements between one firm and several other firms at the same level of distribution, the Supreme Court has "squarely held that a horizontal agreement is a prerequisite in a group boycott case"); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435-36 (6th Cir. 2008) (dismissing group boycott claim where vertical agreements were alleged, but no agreements were identified between competitors).

Redbox, however, alleges no concerted action by Universal (whether horizontal or vertical) aimed at excluding one of *its competitors*.  Nor does it allege concerted, horizontal

action at the distributor or retailer level directed at a market participant at either of those levels. It does not, for example, allege that retailers such as Best Buy and Wal Mart agreed with Universal *and* between themselves not to sell Universal DVDs to Redbox.  Neither does it allege that Universal agreed with *its competitors*, as well as with its distributors or retail partners, to shut Redbox out of the DVD rental business.  *See Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270, 291 (S.D.N.Y. 2007).

Lacking any such horizontal allegations (much less facts supporting such allegations), Redbox should not be permitted to turn this case -- which involves nothing more than an alleged vertical restraint or series of restraints between Universal and its distributors regarding the terms on which Universal DVDs will be distributed -- into something it is not.  *Genetic Systems*, 691 F. Supp. at 416-17 ("A mere exclusionary agreement between businesses at different levels of competition does not necessarily constitute the type of 'vertical' agreement determined to be an illegal *per se* group boycott.").

**B.    Redbox Must Allege "Anticompetitive Effects" And The Court's Conclusion That It Has Done So Despite The Absence Of Allegations Of Harm To Interbrand Competition Is Contrary To The Great Weight Of Controlling Authority**

As demonstrated above, Redbox's core allegations (when stripped of the "magic" antitrust words in which they are dressed) suggest nothing more than a vertical agreement between Universal and its distributors regarding the terms on which Universal products may be distributed.  No matter what label Redbox attempts to apply, whether "boycott" or otherwise, a plaintiff alleging a Sherman Act Section 1 claim must sufficiently allege the existence of anticompetitive effects, which Redbox has failed to do here.  Courts have routinely dismissed similar vertical restraint cases at the pleading stage for failure to state a cognizable antitrust claim.  *See Fray Chevrolet Sales, Inc. v. General Motors Corp.*, 536 F.2d 683, 686 (6th Cir.

1976) (noting that the "opinions have been unanimous … in holding that a manufacturer's changes in his distribution system, vertical realignments, or transfers, do not offend anti-trust laws") (citation and quotations omitted); *H & B Equipment Co. Inc. v. International Harvester Co.*, 577 F.2d 239 (5th Cir. 1978) (holding that, even if a conspiracy between a supplier and its distributor to eliminate another distributor were proven, the supplier would not have violated the antitrust laws).

The fundamental rationale underlying these cases is that the vertical restraint at issue -- be it an exclusive distributorship, territorial restriction, or otherwise -- promotes, rather than restrains, *interbrand* competition (that is, competition between competing suppliers), which is the primary focus of the antitrust laws. The prime explanation of this rationale derives from a landmark case addressing vertical restraints, *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977), which this Court cites in its Order at p. 9 as reflecting, "practically speaking," Redbox's core antitrust theory here. In that case, the Supreme Court made clear that vertical restraints generally promote competition as between suppliers (that is, interbrand competition), because they serve as the mechanism by which suppliers implement their distribution plans in order to compete with other suppliers for sales (or in this case, sales or rentals) to consumers. *Id.* at 54-55; *see also K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*, 61 F.3d 123, 128 (2d Cir. 1995) (noting that, "[t]o prevail on a § 1 claim, a plaintiff must also show more than just an adverse effect on competition among different sellers of the same product ('intrabrand' competition)").

Vertical restraints -- such as agreements providing one distributor with an exclusive right to sell within a particular geographic area, or -- by analogy to this case -- agreements permitting some outlets to rent or sell DVDs before other outlets -- are the very means by which suppliers

compete with each other.  Thus, with limited exceptions not present here, when a plaintiff fails to allege harm to interbrand competition, it likewise fails to state a claim under Section 1 of the Sherman Act.  *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 807 (6th Cir. 1988) ("Sixth Circuit precedent, supported by antitrust law in other Circuits, makes clear that a complaint charging restraint of trade based on a manufacturer's substitution of one distributor for another must allege anticompetitive effect at the interbrand level to survive a Rule 12(b)(6) motion"); *see also id.* at 810 ( "Every distribution choice by a manufacturer could be either a good or bad decision from a business standpoint, but the antitrust laws have never been intended to police such a choice, absent any allegation that such choice is part of a scheme to create monopoly market power by the manufacturer, or which is based on, or causes, anticompetitive effect at the interbrand level.").

Redbox may disagree with Universal's decisions as to how best to distribute its DVDs, but it alleges no harm to interbrand competition as a result of these decisions.  In light of the fundamental principles set forth above, and given the lack of any authority to the contrary, substantial grounds for difference of opinion exist with respect to this Court's Order, and immediate interlocutory review is justified.

C.    **Redbox Misunderstands The Principles Of Product Market Definition In Sherman Act Section 1 Cases**

While the pleading failures discussed above are sufficient to justify immediate interlocutory review of this Court's Order, Redbox's failure to allege a relevant product market provides yet another ground for review.  In its Motion to Certify, Universal explained that Redbox and the Court had improperly defined the relevant product market in this case as "the DVD rental and sales markets of Universal DVDs."  Motion at 6 (quoting Order at 9).  Redbox now responds with the following three assertions: (1) Redbox need not define the product market

because it has instead provided "evidence of direct anticompetitive effects," which "dispenses with the need for market definition evidence of market power,"  Opposition Brief at 2; (2) to the extent it is necessary to define the existence of a product market in this case, Redbox has defined either a "market for single, unique copyrighted works on DVD, or in the alternative, a weekly market for new-release DVDs, with relevant sub-markets by category or genre," not a "Universal DVD market," *Id.* at 10; and (3) even if Redbox had alleged a "Universal DVD market," that market definition is appropriate under the Supreme Court's decision in *Eastman Kodak Co. v. Image Tech. Servs. Inc.*, 504 U.S. 451 (1992).  *Id.* at 11.  All of these responses are wrong.

1.    **Redbox Cannot Avoid The Requirement That It Plead A Properly Defined Market**

Redbox argues in its Opposition Brief that it is relieved of the requirement to allege anticompetitive effects within a defined market by virtue of the fact that it purportedly has "alleged facts demonstrating direct anticompetitive effects, including artificial constriction of supply, price increases, and a boycott resulting from Universal's challenged actions."  Opp. Brief, at 11.  These supposed "facts," which Redbox claims demonstrate the existence of anticompetitive effects as well as the existence of Universal's market power, consist of the following: new-release or copyrighted DVDs that were being rented from Redbox for $1.00 will now cost more.  Redbox then makes a gigantic leap from this "fact" to the conclusion that, "[w]here direct evidence of the power to raise price above the competitive level exists, formal market definition as a means of demonstrating market power is simply not an element of proof required to establish a Section 1 violation.  *Id.* at 12.

The fact that Universal chooses not to distribute to a low-cost rental outlet does not, in and of itself, establish the ability to "raise prices" above any supposedly competitive level. Moreover, "[a] manufacturer has a natural monopoly in the sale and distribution of its own

product[]," but that does not necessarily mean it has market power. *Re-Alco Industries, Inc. v. National Center for Health Education, Inc.*, 812 F. Supp. 387, 392 (S.D.N.Y. 1993). Courts have little trouble rejecting claims of market power on this basis and necessarily require more, in the way of factual allegations and legally plausible analyses, in support of an allegation that a defendant's actions have caused anticompetitive effects in a relevant market. *See, e.g.*, *Discon Inc v. NYNEX Corp.*, 86 F. Supp. 2d 154, 161 (W.D.N.Y. 2000) ("[T]o define the relevant product market as that group of products over which defendants' anticompetitive conduct exercises control … as an analytic matter reads the market definition step out of the Sherman Act.") (citation and internal quotation marks omitted).

> **2.     The Proposed Product Markets Identified By Redbox Are Untenable As A Matter Of Law**

Redbox's failure to allege direct evidence of anticompetitive effects means that it must instead allege a relevant product market within which the effects of Universal's actions can be judged. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) ("The Supreme Court requires plaintiffs to identify the relevant product and geographic markets so the district court can assess what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market.") (internal quotations and citation omitted). Redbox attempts to define the relevant market as either  the "market for single, unique copyrighted works on DVD" or a "weekly market for new-release DVDs, with relevant sub-markets by category or genre," but both attempts fail under directly applicable, binding precedent. Opposition Brief, at 10.  Its alternative argument in favor of the Court's "Universal DVD" market, relying on the Supreme Court's decision in *Eastman Kodak*, is likewise without merit. *Id.* at 11.

### a.    Copyrights Do Not Necessarily Define Product Markets

As an initial matter, intellectual property rights, such as those conferred by patent, copyright or trade secret, are not presumed to confer market power.  *See Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28, 42-43 (2006); *Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 973 (9th Cir. 2008) ("Because intellectual property rights are no longer presumed to confer market power … [plaintiff's] conclusory allegation that [defendant's] intellectual property rights nonetheless do confer market power, unaccompanied by supporting facts, is insufficient.") (internal citation omitted); *Sheridan v. Marathon Petroleum Co., LLC*, 530 F.3d 590, 595 (7th Cir. 2008) ("'Not even the most zealous antitrust hawk has ever argued that Amoco gasoline, Mobil gasoline, and Shell gasoline'--or, we interject, Marathon gasoline-- 'are three [with Marathon, four] separate product markets.'" (quoting *Generac Corp. v. Caterpillar, Inc.*, 172 F.3d 971, 977 (7th Cir. 1999)).  Thus, the fact that a particular DVD is copyrighted does not make it so "unique" as to constitute its own relevant market for antitrust purposes.  *A.I. Root Co. v. Computer Dynamics, Inc.*, 806 F.2d 673, 676 (6th Cir. 1986) ("[T]he equipment using [defendant's] software in the instant case had 'close substitutes.'  Therefore, the fact that [the software] is copyrighted is not determinative of 'market power.'").

Redbox's attempt to confine the market to "unique copyrighted works on DVD" is therefore precluded by Supreme Court precedent.

### b.    Consumer Preference Alone Does Not Support A Market Definition

Although Redbox asserts that the Third Circuit's decision in *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, is one of several cases supporting its claims, that decision actually reveals the failure of Redbox's proposed "weekly market for new release DVDs, with relevant sub-markets by category or genre" definition.  124 F.3d 430 (3d Cir. 1997).  Indeed, although a

consumer might prefer to watch a particular new release title in a particular category or genre when renting or purchasing a DVD, consumer preference alone does not allow Redbox to escape the basic principles of market definition -- the need to define the market "with reference to the rule of reasonable interchangeability and cross-elasticity of demand" and to propose a market that "encompass[es] all interchangeable substitute products." *Id.* at 436; *see also Allen-Myland, Inc. v. International Business Machines Corp.*, 33 F.3d 194, 206 (3d Cir. 1994) ("Interchangeability implies that one product is roughly equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively.  A person needing transportation to work could accordingly buy a Ford or a Chevrolet automobile, or could elect to ride a horse or bicycle, assuming those options were feasible."); *Reading International, Inc. v. Oaktree Capital Management LLC*, No. 03 Civ. 1895, 2007 WL 39301, *3, n.7 (S.D.N.Y. Jan. 8, 2007) (rejecting argument that art films and foreign films, for example, are not interchangeable with "top grossing commercial films").

Merely alleging that a consumer would *prefer* to watch "Brüno," for example, instead of "To Kill a Mockingbird," without any reference (other than conclusory allegations) to price sensitivity or any other facts bearing on either interchangeability or cross-elasticity of demand in the marketplace, is insufficient as a matter of law to support the narrow market definitions Redbox proposes.  *Queen City*, 124 F.3d at 438 (explaining that, when assessing reasonable interchangeability, factors to be considered include price, use, and qualities; likewise, cross-elasticity of demand requires inquiry into whether "the rise in the price of a good within a relevant product market would tend to create a greater demand for other like goods in that market") (quotations and citations omitted); *Reading International*, 2007 WL 39301, at *11 ("The Court is very dubious that [plaintiff's proposed market of "Top Commercial Films"] are

anything other than the films which Plaintiffs want, but that does not place such films in a separate product market.").

> c.   *Kodak* Does Not Support A Single Brand Market Definition In This Case

Finally, the Supreme Court's decision in *Eastman Kodak*, upon which Redbox heavily relies in its Opposition Brief, offers Redbox no support in its defense of the Court's "Universal DVD" market definition. 504 U.S. 451. While *Kodak* arguably stands for the proposition that one brand of product can, under some circumstances, constitute a relevant market, the Court in that case made clear that the product need not only be unique, but must be one for which, by virtue of the consumer's investment in the product and the defendant's power to limit the aftermarket for goods and services to support that product, no reasonable substitutes exist. *Id.* at 481-82. The Court's holding in *Kodak* is thus limited to those situations in which purchasers are "locked in" to buy additional products and/or services because of their prior purchase of the defendant's product. *See Hack v. President and Fellows of Yale College*, 237 F.3d 81, 87 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (holding that Yale education, although "unique" in a collegiate sense, does not constitute relevant product market and distinguishing *Kodak* on the grounds that, "Yale's housing policies were fully disclosed long before plaintiffs applied for admission. They had no 'lock-in' costs."); *Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997) ("Only customer preference for a product, not compulsion by the product itself as in *Kodak*, leads a customer to buy a TWA ticket as opposed to another airline ticket.").

Thus, whether described as a "unique, copyrighted DVD market," "new release DVD market with relevant sub-markets by category or genre," or "Universal DVD market," Redbox's attempted product market definition fails as a matter of law, as demonstrated by scores of cases

rejecting similar attempts by antitrust plaintiffs to limit a product market to a single brand or other product category that competes with potential substitutes. *Spahr v. Leegin Creative Leather Products, Inc.*, No. 2:07-CV-187, 2008 WL 3914461, *9 (E.D. Tenn. Aug. 20, 2008) (rejecting single brand market definition and noting that, "[i]f the plaintiffs were correct … a whole host of products which enjoy brand loyalty, such as Pepsi, Coca Cola, Rolex watches, fast foods, Chevrolet, Ford, Chrysler, Volkswagen, and Dodge automobiles, office supplies, ice cream, and the like would all become relevant product markets for antitrust purposes.  Plaintiffs ignore, however, volumes of case law which reject such a conclusion."); *Global Discount*, 960 F. Supp. at 705 (rejecting plaintiff's attempt to define relevant product market as "tickets for travel on TWA between certain city pairs;" although plaintiff argued that, when a "consumer needs to fly from a TWA, origin city to one of TWA's destination cities, and wants a certain package (flight time and date, mileage, first class confirmed seat at full fare price, etc.), only a TWA ticket will do," court noted that those factors were "simply features that enhance the enjoyment of the product").

This Court's failure to dismiss Redbox's claim despite its erroneous market definition is thus contrary to controlling authority and immediate interlocutory review is justified.

## III.  CONCLUSION

The great weight of judicial authority indicates substantial grounds for difference of opinion with this Court's Order allowing Redbox's antitrust claim to proceed, justifying immediate interlocutory review.  Here, such review is not only justified in light of the fundamental antitrust principles discussed above, but is critical to prevent further harm to properly-functioning competition in the marketplace, and to prevent the courts from becoming arbiters of business disputes that do not implicate the competition laws or the protection of

consumer welfare. For the reasons set forth above, Universal respectfully requests that the Court grant its request that this Court's August 17, 2009 Order be certified for immediate interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: November 9, 2009

Respectfully submitted,

*/s/ R. Montgomery Donaldson*
R. Montgomery Donaldson (DE Bar ID 4367)
*rdonaldson@mmwr.com*
Lisa Zwally Brown (DE Bar ID 4328)
*lzbrown@mmwr.com*
**Montgomery, McCracken, Walker & Rhoads, LLP**
1105 N. Market St., Suite 1500
Wilmington, DE  19801
(302) 504-7800
*Counsel for Defendants Universal Studios Home Entertainment, LLC, Universal City Studios, LLLP, Universal City Studios Productions, LLLP, and Focus Features, LLC*

ATTORNEY FOR DEFENDANTS OF COUNSEL:
*/s/ David C. Dinielli*
Glenn D. Pomerantz, Bar No. 112503
David C. Dinielli, Bar No. 177904
Munger, Tolles & Olson LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560


Paul H. Zoubek
(PA Bar I.D. No. 36716)
R. Monica Hennessy
(PA Bar I.D. No. 77928)
**Montgomery McCracken, Walker & Rhoads, LLP**
Liberty View
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
(856) 488-7700

- 14 -

9210344.3